UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2024 FEB 13 PM 3:58
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ___CR___

| | |
|---|---|
| In The Matter Of A Subpoena Served In:<br><br>*Lastephon Rogers v. Tug Hill Operating, LLC*, pending in the United States District Court of the Northern District of West Virginia, Civil Action No. 5:21-CV-199<br><br>RUSCO Operating, LLC<br><br>Movant<br><br>v<br><br>Tug Hill Operating, LLC<br><br>Respondent | § § § § § § § § § § § § § § § § § § § § § § § § | Misc. Case No. 1:24MC00151 DII |

## MOTION TO QUASH SUBPOENA

**I.   INTRODUCTION**

RUSCO Operating, LLC ("RigUp") is in the independent-contractor business. It facilitates relationships between skilled, independent oil-and-gas professionals, on the one hand, and oil-and-gas operators, on the other. Tug Hill Operating, LLC ("Tug Hill") is one such operator.

In 2021, one of RigUp's independent contractors sued Tug Hill, claiming that Tug Hill was his employer and that he was misclassified under the Fair Labor Standards Act ("FLSA"). *Lastephon Rogers v. Tug Hill Operating, LLC*, Civil Action No. 5:21-CV-199 (N.D. W. Va. Dec. 3, 2021), ECF No. 1. Recently, on January 17, 2024, the West Virginia court conditionally certified a collective action under the FLSA and authorized notice of that collective action to: "All

company men performed by or performing work on behalf of Tug Hill classified as independent contractors and paid a day-rate without overtime during the past three years." Order Granting In Part and Denying in Part Motion for Conditional Certification at 19, *Rogers*, No. 5:21-CV-199 (N.D. W. Va. Jan. 17, 2024), ECF No. 72.

In order to effectuate notice, Tug Hill has issued a subpoena to RigUp asking for, among other things, "A true and complete listing of the names and contact information for any PUTATIVE CLASS MEMBER who worked on projects for TUG HILL for the RELEVANT TIME PERIOD." (Exhibit 1, Declaration of Nik Abraham, Attachment A.)

The problem, however, is that individuals who are bound to arbitrate the employment claims at issue cannot receive notice of an FLSA lawsuit. *See, e.g., In re JPMorgan Chase & Co.*, 916 F.3d 494, 502–03 (5th Cir. 2019). And, of the seventy-seven RigUp independent contractors who meet the *Rogers* collective action definition, sixty-seven have executed agreements with RigUp that include specific language that requires individual arbitration of claims against operators such as Tug Hill.

The subpoena at issue demands compliance on February 13, 2024 in this district, necessitating this miscellaneous action to quash the subpoena.[1] Accordingly, RigUp moves to quash the subpoena to the extent it seeks information on those who have agreements requiring arbitration of claims against Tug Hill. Because they cannot join the collective action at issue, there is no relevance to their information whatsoever.

---

[1] *See, e.g., Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, No. 1:15-cv-00134-RP, 2016 WL 11262557 (W.D. Tex. March 28, 2016); *JMC Rest. Holdings, LLC v. Pevida*, No. 14-cv-6157 (WFK) (VMS), 2015 WL 2240492, at *4 (E.D.N.Y. May 12, 2015); *Johnson v. Simmons*, No. 1:13-cv-205-HSO-RHW, 2015 WL 2155714, at *2 (S.D. Miss. May 7, 2015); *Semex All. v. Elite Dairy Genomics, LLC*, No. 3:14-cv-87, 2014 WL 1576917 (S.D. Ohio. Apr. 17, 2014); *Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, No. 12-257-JJB-RLB, 2014 WL 204244, at *2 (M.D. La. Jan. 17, 2014).

## II.     FACTUAL CONTEXT

### a. RigUp's Business

RigUp operates an online platform through which independent contractors market their services to oil-and-gas operators. (Exhibit 1 ¶ 5.) These contractors are professionals with expertise in a variety of oilfield services. (Ex. 1 ¶ 5.) RigUp also provides administrative support to those independent contractors. (Ex. 1 ¶ 6.) These include payment, insurance, and recordkeeping. (Ex. 1 ¶¶ 7–8.) For example, contractors submit invoices to RigUp, which then pays that invoice less a "split" percentage that compensates RigUp. (Ex. 1 ¶ 8.) RigUp has spent extensive amounts in developing its platform and its customer base to accomplish this. (Ex. 1 ¶ 7.)

This business model well serves both contractors and customers in the oil-and-gas industry, which is driven by boom-and-bust cycles. With fluctuations in prices, the industry depends on being able to "scale up and down very rapidly." Steven Cohen & William B. Eimicke, *Independent Contracting: Policy and Management Analysis*, COLUM. SCH. OF INT'L AFFAIRS 15 (2013). Concomitantly, the independent contractors who utilize RigUp's services also benefit, choosing an independent contractor arrangement because they "have more control over their economic destiny." *Id.* at 16. Independent contractors similarly take advantage of favorable tax treatment for that status and enjoy the ability to accept projects based solely on their own preference.

Tug Hill is an operator and RigUp customer to which RigUp facilitates the relationship between operator and independent contactor. (Ex. 1 ¶ 8.)

### b. *Rogers* and The Subpoena

Lastephon Rogers was one of the independent contractors with whom RigUp contracted and placed with Tug Hill. (Ex. 1 ¶ 8.). Rogers sued Tug Hill in West Virginia, alleging that Tug Hill misclassified him as an independent contractor and failed to pay statutory overtime for hours

worked in excess of forty per week. *Rogers*, No. 5:21-CV-199 (N.D. W. Va. Dec. 3, 2021), ECF No. 1. The West Virginia court originally granted Tug Hill's motion to dismiss in favor of arbitration, determining *inter alia* that Tug Hill was a third party beneficiary of the agreement that Rogers executed. *Rogers v. Tug Hill Operating, LLC.*, 598 F. Supp. 3d 404 (N.D. W.Va. 2022). The Fourth Circuit reversed. *Rogers v. Tug Hill*, 76 F.4th 279 (4th Cir. 2023).

The litigation then proceeded with Rogers moving for conditional certification. The West Virginia court granted that motion in part, certifying a class of "All company men performed by or performing work on behalf of Tug Hill classified as independent contractors and paid a day-rate without overtime during the past three years" and directing that notice of the collective action be sent to those individuals. Order Granting In Part and Denying in Part Motion for Conditional Certification at 19, *Rogers*, No. 5:21-CV-199 (N.D. W. Va. Jan. 17, 2024), ECF No. 72. As a result, Tug Hill is required to produce a contact list to facilitate that notice.

On January 25, 2024, Tug Hill issued a subpoena to RigUp asking for, among other things, "A true and complete listing of the names and contact information for any PUTATIVE CLASS MEMBER who worked on projects for TUG HILL for the RELEVANT TIME PERIOD." (Ex. 1 ¶ 10; *see also* Ex. 1, Attach. A.) RigUp understands that the purpose of this request is to obtain contact information of RigUp's independent contractors so that notice of the conditional collective action may be served on them. (Ex. 1 ¶ 11.)[2]

### c. The Agreements At Issue

There are seventy-seven Rig Up independent contractors who meet the definition of the collective set forth in *Rogers*. (Ex. 1 ¶ 12.) Of those seventy-seven, ten have agreements exactly

---

[2] The subpoena also includes twenty-four other requests that RigUp is serving objections to. During conferences on the subpoena, RigUp and Tug Hill have stipulated as to be addressed following the determination of the threshold issue presented in this Motion.

like Rogers himself. (Ex. 1 ¶ 13.) Where the Fourth Circuit has held that this agreement does not require arbitration of claims against Tug Hill, RigUp is producing contact information responsive to the subpoena request at issue. (Ex. 1 ¶ 13.)

But, Rig-Up has newer versions of its arbitration agreement that, unlike the Rogers' agreement, include specific language that requires individual arbitration of claims against operators such as Tug Hill. (Ex. 1 ¶ 14.) This Motion is about those two agreements.

*First*, there is the agreement set forth in Attachment B to the Abraham Declaration. (Ex. 1, Attach. B.) Of the seventy-seven contractors at issue, fifty-seven have signed this agreement. (Ex. 1 ¶ 15.) That agreement includes the following pertinent provisions:

> 14. Dispute Resolution. In the interest of resolving any disputes between you and Workrise,[3] or you and Company--an intended third party beneficiary of this Dispute Resolution Section—in the most expedient and cost effective manner, the Parties affirmatively agree that every claim, controversy, allegation, or dispute arising out of or relating in any way to the Project, the Project Details, or this Agreement ("Work Dispute"), both past and future, including without limitation before the Project, after the completion of the Project, and after abandonment of the Project, shall be resolved by binding arbitration administered by one arbitrator through the American Arbitration Association. This agreement to arbitrate shall extend to any entity you sue concerning a Work Dispute or Engagement Dispute (as defined below) and allege is your employer, jointly or otherwise. Such entity is likewise an intended third party beneficiary of this Dispute Resolution Section.
>
> 14.1 Mutual Agreement and Covered Claims. This Agreement to arbitrate is mutual, covering all past and future claims, controversies, allegations, or disputes (including disputes over the enforceability, arbitrability, interpretation, and scope of this Agreement) that (1) you may have against Workrise and/or any Company, and to any other entity you sue or (2) that Workrise may have against you, regarding your engagement and/or termination of engagement with Workrise, including any and all claims of misclassification . . . claims for compensation, hours of work, wages, pay, overtime compensation, classification as exempt or nonexempt for overtime purposes, benefits, hours and pay, . . . . , including, but not limited to, claims under the . . . the Fair Labor Standards Act . . . and all local, state, or federal discrimination, harassment, retaliation, wage and hour, background check and biometric screening laws ("Engagement Disputes."). The Parties mutually agree that they shall resolve all Work or Engagement Disputes by binding arbitration,

---

[3] RigUp changed its name to Workrise. (Ex. 1 ¶ 2.)

without regard to whether the Work or Engagement Disputes relate to acts, omissions, or other facts that occurred prior to the date of this Agreement.

All references to "you" include you as well as your estate or any other person or entity claiming by or through you. All references to "Company" include any Workrise customer with whom (1) you accepted work with or otherwise performed services on behalf of or (2) you claim/allege is your employer, jointly with Workrise or otherwise, including each of their respective affiliates, subsidiaries or parent companies, and any of their respective officers, directors, members, owners, partners, employees, or managers. Indeed, each such entity or individual is expressly intended to be third-party beneficiaries of this Agreement. Either you or Workrise may be referred to as "Party" and both by "Parties."

. . . .

14.15 Class Action, Collective Action and Representative Action Wavier ("Class Action Waiver"). Any claim must be brought solely in a Party's individual capacity, and not as a plaintiff or class member in any purported class action, collective action, representative action, mass action, multiple plaintiff proceeding or similar proceeding (together a "Class Action"). You and Workrise expressly waive any right or ability to bring, assert or maintain any Class Action in court, arbitration or any other forum. You and Workise agree not to participate in either: (1) a Class Action against each other as either as a class or collective action representative or member; or (2) a Class Action against any Company as either a class or collective action representative or member. You and Workrise further waive any right or ability to join or to consolidate claims or discovery with any other person or entity.

. . . .

**THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER, AND THAT YOU MAY BRING CLAIMS AGAINST A COMPANY, ONLY IN THEIR INDIVIDUAL CAPACITIES AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, OR COLLECTIVE OR REPRESENTATIVE PROCEEDING. THE PARTIES UNDERSTAND AND CHOOSE TO HAVE CLAIMS UNDER THIS AGREEMENT DECIDED INDIVIDUALLY, THROUGH ARBITRATION.**

(Ex. 1, Attach. B § 14.)

***Second***, there is the agreement set forth in <u>Attachment C</u> to the Abraham Declaration. (Ex. 1, Attach. C.) Of the seventy-seven contractors at issue, nine have signed this agreement. (Ex. 1 ¶ 16.) That agreement includes the following pertinent provisions, which substantively mirror those set forth above. (Ex. 1, Attach. C § 14.)

## III. ANALYSIS

The Fifth Circuit holds that "district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019). As the Fifth Circuit explained, "alerting those who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what [the Supreme Court] flatly proscribes." *Id.* at 502 (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989)). Thus, the Fifth Circuit flatly prohibits sending notice of an FLSA collective action to individuals who have agreements requiring arbitration of the claim. *Id.* at 502–03; *see also Bigger v. Facebook*, 947 F.3d 1043, 1050 (7th Cir. 2020) (same).

*Hennigar v. Applied Consultants, Inc.*, No. 4:21-MC-00889 (S.D. Tex. May 26, 2021), ECF No. 34, illustrates exactly why Tug Hill's subpoena must be quashed. (*See* Exhibit 2.) There, Thomas Hennigar (represented by the same counsel as Rogers), brought a lawsuit against an operator even though he was employed by an inspection company called Applied Consultants, which assigned him to inspect the operator's pipelines. The parties stipulated to conditional certification, and Hennigar sent a subpoena seeking contact information for the purpose of sending notice pursuant to that stipulation. Applied Consultants objected, and Hennigar moved to enforce.[4]

---

[4] There was some procedural morass. Hennigar first opened a miscellaneous action in the Southern District of Texas to enforce his subpoena. *Hennigar*, No. 4:21-MC-00889 (Dec. 2, 2020), ECF. No. 1. The initial judge granted the motion prematurely without the benefit of Applied Consultants' response. *Hennigar*, No. 4:21-MC-00889 (Dec. 18, 2020), ECF. No. 2. Applied Consultants moved to reconsider, noting that the Southern District of Texas lacked jurisdiction because Hennigar's subpoena sought compliance in the Northern District of Texas. *Hennigar*, No. 4:21-MC-00889 (Dec. 23, 2020), ECF. No. 5. In light of that jurisdictional defect, the Parties entered an agreed motion to withdraw the enforcement order and transfer. *Hennigar*, No. 4:21-MC-00889 (Jan. 13, 2021), ECF. No. 7; *Hennigar*, No. 4:21-MC-00889 (Jan. 15, 2021), ECF. No. 8. In the Northern District, the magistrate judge ordered Applied Consultants to provide contact information to a claims administrator despite their arbitration agreements. *Hennigar*, No. 4:21-

After the magistrate judge initially ordered the production of information to a claims administrator for the purposes of sending notice, the District Court reversed and excused compliance:

> Hennigar wants to send notice to these inspectors, giving them a chance to opt in to his conditionally certified FLSA collective action. Id. Applied has produced arbitration agreements for all of the inspectors it supplied to Targa. Dkt. 4-1. The court finds that the language in the arbitration agreements is broad enough to encompass any claims that Applied's inspectors would have against Targa.
>
> The Fifth Circuit held in 2019 that "district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action." In re JP Morgan Chase & Company, 916 F.3d 494, 501 (5th Cir. 2019). In justifying the holding, the Fifth Circuit explained that the "purpose of giving discretion to facilitate notice is because of the need for 'efficient resolution in one proceeding of common issues.'" Id. at 502. But "[n]otifying Arbitration Employees reaches into disputes beyond the 'one proceeding.'" Id. "And alerting those who cannot ultimately participate in the collective 'merely stirs up litigation,'" which is flatly proscribed. Id. Because the court is proscribed from sending notice of the FLSA collective action to Applied's inspectors due to their arbitration agreements, their contact information is not discoverable because it is not relevant. See Fed. R. Civ. P. 26(b)(1). Thus, the DO is contrary to law and the court cannot adopt it.

(Ex. 2. at 2.) The same result is required here.

To begin, unlike the Rogers agreement, the arbitration agreements in Attachment B and Attachment C explicitly require—twice—the arbitration of any claims arising out of work the independent contractor does under the agreement, including all disputes—including disputes under the FLSA—between the independent contractor and the "Company" (that is, a customer like Tug Hill to whom the contractor "accepted work with or otherwise performed services on behalf of" or "you claim/alleges is your employer"). (Ex. 1, Attach. B § 14; Ex. 1, Attach. C § 14; Ex. 1, Attach. B § 14.1; Ex. 1, Attach. C § 14.1.)

---

MC-00889 (Mar. 15, 2021), ECF No. 22. Applied Consultants than objected, and without waiting for a reply brief the district court judge transferred the case back to the Southern District of Texas. *Hennigar*, No. 4:21-MC-00889 (Apr. 13, 2021), ECF. No. 25. The Southern District of Texas then overruled the magistrate judge order as set forth in Exhibit 2.

Lest there be any doubt, the arbitration agreements in <u>Attachment B</u> and <u>Attachment C</u> to Exhibit 1 explicitly provided, in three different spots, that companies like Tug Hill are intended third party beneficiaries (language also missing from Rogers' agreement):

- In the interest of resolving any disputes between you and Workrise, or you and Company--an intended third party beneficiary of this Dispute Resolution Section—in the most expedient and cost effective manner, the Parties affirmatively agree that every claim, controversy, allegation, or dispute arising out of or relating in any way to the Project, the Project Details, or this Agreement ("Work Dispute").

- This agreement to arbitrate shall extend to any entity you sue concerning a Work Dispute or Engagement Dispute (as defined below) and allege is your employer, jointly or otherwise. Such entity is likewise an intended third party beneficiary of this Dispute Resolution Section.

- All references to "Company" include any Workrise customer with whom (1) you accepted work with or otherwise performed services on behalf of or (2) you claim/allege is your employer, jointly with Workrise or otherwise, including each of their respective affiliates, subsidiaries or parent companies, and any of their respective officers, directors, members, owners, partners, employees, or managers. Indeed, each such entity or individual is expressly intended to be third-party beneficiaries of this Agreement. Either you or Workrise may be referred to as "Party" and both by "Parties

Going further, the arbitration agreements in <u>Attachment B</u> and <u>Attachment C</u> also include collective action waivers (absent in Rogers' agreement) that expressly include joining such representative actions against a "Company" as defined to include operators like Tug Hill:

> **THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER, AND THAT YOU MAY BRING CLAIMS AGAINST A COMPANY, ONLY IN THEIR INDIVIDUAL CAPACITIES AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, OR COLLECTIVE OR REPRESENTATIVE PROCEEDING. THE PARTIES UNDERSTAND AND CHOOSE TO HAVE CLAIMS UNDER THIS AGREEMENT DECIDED INDIVIDUALLY, THROUGH ARBITRATION**

(Ex. 1, Attach. B § 14.5; Ex. 1, Attach. C § 14.5.)

Like the *Hennigar* court found that the arbitration agreements presented to it were broad enough to cover any claims the workers had against the operator there, this Court should reach the

same conclusion with respect to the arbitration agreements in <u>Attachment B</u> and <u>Attachment C</u>.[5] Plainly, these agreements are broad enough to require arbitration of all disputes between those independent contractors and Tug Hill. (Ex. 1, Attach. B § 14; Ex. 1, Attach. C § 14; Ex. 1, Attach. B § 14.1; Ex. 1, Attach. C § 14.1.)[6]

Federal Rule of Civil Procedure 45 only allows discovery through third parties where the discovery sought is nonprivileged, relevant, and proportional to the needs of the case. Fed. R. Civ. P. 45; *see also* Fed. R. Civ. P. 26(b)(1). Because sixty-seven RigUp independent contractors whose information is sought for the purposes of inviting them to join the collective action in *Rogers* cannot, in fact, join that collective action, there is no relevant purpose to this discovery.

## IV. CONCLUSION

For these reasons, RigUp requests this Court quash Tug Hill's subpoena to the extent it seeks any information on those RigUp independent contractors who have entered into the arbitration agreements set forth in <u>Attachment B</u> and <u>Attachment C</u> to Exhibit 1.

---

[5] In *Rogers*, the district court deferred consideration of whether notice should be sent to those with the newer arbitration agreements because those agreements were not presented to him. Order Granting In Part and Denying in Part Motion for Conditional Certification at 14-15, *Rogers*, No. 5:21-CV-199 (N.D. W. Va. Jan. 17, 2024), ECF No. 72 ("Here this court has not seen the arbitration agreement defendant relies upon, much less found the same to be enforceable."). This Motion does present those arbitration agreements.

[6] And, both Texas and West Virginia law recognize that agreements may extend to non-parties where the language of the agreement demonstrates that the contracting parties intended to secure a benefit for that third party, which that third party can enforce. *See,* W. Va. Code § 55-8-12; *Ohio Cty. Dev. Auth. v. Pederson & Pederson, Inc.*, No. 5:09-cv-27, 2010 U.S. Dist. LEXIS 6077, at *5 (N.D. W. Va. Jan. 26, 2010); *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017).

Dated: February 13, 2024

Respectfully submitted,

By:    */s/ Marina Stefanova*
      Marina Stefanova
      Texas Bar No. 24093200
      **MCDERMOTT WILL & EMERY LLP**
      2501 North Harwood St Suite 1900
      Dallas, TX 75201
      Tele: +1 214 295 8000
      Fax: +1 972 232 3098
      mstefanova@mwe.com

      Barrick Bollman, *pro hac vice forthcoming*
      **MCDERMOTT WILL & EMERY LLP**
      444 W. Lake Street, Suite 4000
      Chicago, IL 60654
      Tele: +1 312 984 2097
      Fax: +1 312 277 2366
      bbollman@mwe.com

      *Attorneys for Movant*

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 30, 2024, February 6, 2024, and February 12, 2024, I conferred with counsel for Respondent regarding this Motion and the relief requested herein. Counsel for Respondent did not agree to withdraw the Subpoena and is opposed to the Motion. As a result, this Motion is submitted for the Court's consideration.

*/s/ Barrick Bollman*
Barrick Bollman

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2024, a true and correct copy of the foregoing Motion to Quash and all attached materials was served by email on the following:

Erin McLaughlin
Christian Antkowiak
Katelyn O'Connor
Buchanan Ingersoll & Rooney PC
Union Trust Building, Suite 200
Pittsburgh, PA 15219-4413
Erin.McLaughlin@bipc.com
Chistian.Antkowiak@bipc.com
Katelyn.Oconnor@bipc.som

*Attorneys for Respondent
Tug Hill Operating LLC*

*/s/ Marina Stefanova*
Marina Stefanova
