# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| RUSCO Operating, LLC, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>Tug Hill Operating, LLC, §<br>§<br>Defendant. §<br>§ | Case No.: |

## DECLARATION OF NIK ABRAHAM

1.      My name is Nik Abraham. I am over the age of 21, of sound mind, and otherwise competent to make this declaration. All of the facts set forth in this declaration are true and correct and based on my own personal knowledge or documents created and kept, and practices conducted, in the regular course of Workrise Technologies, Inc.'s business.

2.      RigUp, Inc. changed its name to Workrise Technologies, Inc. in 2021. For purposes of this declaration, I will refer collectively to RigUp, Inc. and Workrise Technologies, Inc. as "RigUp." RUSCO Operating, LLC ("RUSCO") is a wholly owned subsidiary of RigUp.

3.      I have been employed by RigUp since September 2022. I currently serve as Associate General Counsel. By virtue of my experience in this role within RigUp's legal department, I personally am familiar with RigUp's policies and practices and have personal knowledge of the facts stated in this declaration.

4.      I make this declaration in support of RUSCO's Motion to Quash Subpoena.

5.      RigUp operates an online platform (an "app") by which skilled independent contractors market their services to oil and gas operators, and by which oil and gas operators search for and connect with independent contractors that meet the needs of particular projects. The skilled

professionals that use RigUp's service include such professionals as drilling fluids engineers, coiled tubing completions consultants, and health and safety experts. Tug Hill Operating, LLC ("Tug Hill") is an operator and a RigUp customer.

6.      Many independent contractors in the industry work and bill as their own limited liability entities. Many independent contractors in the industry do not handle the administrative tasks associated with their work for operators, including such tasks as payment processing, insurance, and record-keeping. Part of the service RigUp provides, in addition to maintaining the platform by which contractors market their services, is to perform these administrative functions. RigUp has developed its "app," into which millions of dollars have been invested, specifically to (among other things) facilitate the administrative tasks associated with work performed by independent contractors.

7.      After a contractor performs work, RigUp (more precisely in this case, RUSCO) pays the contractor in accordance with an invoice submitted by the contractor, less a percentage known as the "split" that compensates RigUp for its service. Operators like Tug Hill then pay RigUp the balance invoiced.

8.      I understand that one of RigUp's independent contractors brought a lawsuit in the Northern District of West Virginia alleging that Tug Hill was his employer and that he was misclassified under the Fair Labor Standards Act ("FLSA"). That lawsuit is stylized as: *Lastephon Rogers v. Tug Hill Operating, LLC*, Civil Action No. 5:21-CV-199.

9.      I understand that, on January 17, 2024, the Northern District of West Virginia in, the court granted conditional certification in *Rogers* and authorized FLSA notice to "All company men performed by or performing work on behalf of Tug Hill classified as independent contractors and paid a day-rate without overtime during the past three years." (ECF No. 72.)

10.     On January 25, 2024, Tug Hill issued a subpoena to RigUp asking for, among other things, "A true and complete listing of the names and contact information for any PUTATIVE CLASS MEMBER who worked on projects for TUG HILL for the RELEVANT TIME PERIOD." A true and correct copy of that subpoena is attached as **Attachment A.**

11.     I understand that the purpose of this subpoena is to obtain contact information of RigUp's independent contractors so that notice of the conditional collective action may be served on them.

12.     There are seventy-seven (77) Rig Up independent contractors who meet the definition of the collective set forth in *Lastephon Rogers v. Tug Hill Operating, LLC*, Civil Action No. 5:21-CV-199.

13.     Of those seventy-seven, ten (10) signed arbitration agreements with RigUp exactly like the Plaintiff there.   I understand that the United States Court of Appeals for the Fourth Circuit held that this specific arbitration agreement does not extend to third-parties like Tug Hill. Accordingly, RigUp is producing the contact information for these ten individuals.

14.     However, Rig-Up has newer versions of its arbitration agreements that, unlike the Rogers' agreement, include specific language that requires individual arbitration of claims against operators such as Tug Hill.

15.     Of the seventy-seven contractors at issue, fifty-seven (57) have signed the agreement of which a true and correct copy is attached as **Attachment B**.   This arbitration agreement provides that it "shall extend to any entity you sue concerning a Work Dispute or Engagement Dispute (as defined below) and allege is your employer, jointly or otherwise. Such entity is likewise an intended third party beneficiary of this Dispute Resolution Section."

16.    Of the seventy-seven contractors at issue, nine (9) have signed the agreement of which a true and correct copy is attached as **Attachment C.** This arbitration agreement also provides that it "shall extend to any entity you sue concerning a Work Dispute or Engagement Dispute (as defined below) and allege is your employer, jointly or otherwise. Such entity is likewise an intended third party beneficiary of this Dispute Resolution Section."

17.    I declare under the penalty of perjury that the foregoing information is true and correct.


Executed this 13th day of February, 2024.


Nik Abraham

# ATTACHMENT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of West Virginia

Wheeling

| | |
|---|---|
| LASTEPHEN ROGERS, Individually and for others similarly situated | ) |
| *Plaintiff* | ) |
| v. | ) |
| TUG HILL OPERATING, LLC | ) |
| | ) |
| *Defendant* | ) |

Civil Action No. 5:21 -CV-1 99

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   RUSCO Operating, LLC c/o Registered Agent Corporation Service Company d/b/a CSC-Lawyers Incorporating
Service Company, 211 E. 7th Street, Suite 620, Austin, TX, 78701-0000, USA

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Exhibit A

| Place: Planet Depos<br>100 Congress Avenue, Suite 2000<br>Austin, TX 78701 | Date and Time:<br>02/13/2024 10:00 a.m. |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   01/25/2024

|  *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | /s/Erin J. McLaughlin |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   TUG HILL
Operating, LLC                                                              , who issues or requests this subpoena, are:

Erin J. McLaughlin, erin.mclaughlin@bipc.com, 412-392-2090

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT A

## DEFINITIONS

A.      **"PLAINTIFF"** shall refer to Plaintiff LASTEPHEN ROGERS, Individually and for Others Similarly Situated, or any person, agent, or entity acting, or purporting to act on Plaintiff's behalf.

B.      **"TUG HILL"** shall refer to Defendant, Tug Hill Operating, LLC. its predecessor and successor corporations and entities; their divisions, subsidiaries, or affiliated entities; and all present and former officers, directors, employees, consultants, agents or representatives, and any person, agent, or entity acting, or purporting to act, at its request, on its behalf, or under its direction or control.

C.      **"You,"** **"your,"** and **"RUSCO"** shall refer to RUSCO Operating, LLC. its predecessor and successor corporations and entities; their divisions, subsidiaries, or affiliated entities; and all present and former officers, directors, employees, consultants, agents or representatives, and any person, agent, or entity acting, or purporting to act, at its request, on its behalf, or under its direction or control.

D.      **"PUTATIVE CLASS"** or **"PUTATIVE CLASS MEMBER"** shall be defined as drilling and completions consultants.

E.      **"Any"** shall be understood to encompass "all."

F.      The conjunction **"and"** shall include the disjunctive **"or"** and vice versa.

G.      **"Person"** shall mean any natural person, business organization or any other entity.

1

H.    **"DOCUMENT"** or **"DOCUMENTS"** shall have the full meaning as set forth in the Federal Rules of Civil Procedure and includes (but is not limited to) all written, typewritten, handwritten, electronically stored, recorded or printed matter of any kind, including the originals and all non–identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise, including without limitation:  minutes and/or other records of meetings, agendas, bills, contracts, leases, assignments, agreements, contracts, summaries of negotiations, account books, orders, invoices, statements, bills, checks, accounting records, vouchers, summaries, diaries, forecasts, studies, drawings, graphs, charts, reports and/or summaries of investigations or reports, strategic or business plans or summaries, brochures, pamphlets, publications, circulars, advertisements, trade letters, press releases, statements of policy, correspondence, letters, electronic mail, telegrams, interoffice and intraoffice communications, offers, text messages and/or messaging app communications, notations of any sort of conversations, appointment books or calendars, teletypes, telefax, thermafax, confirmations, computer files, printouts of computer files, computer and/or electronic data (including information or programs stored in a computer, or database, whether or not ever printed out or displayed); all drafts, alterations, modifications, changes and amendments of any of the foregoing; all graphic or manual records or representations of any kind, including without limitation, photographs, microfiche, microfilm, video tape, records, motion pictures, and electronic, mechanical or electric records or representations of any kind, including without limitation, tapes, cassettes, disks, magnetic cards, and recordings; and all other similar material which is in your possession, custody or control.  Without limiting the term "control" as used in the preceding sentence, a document shall be deemed to be within your control, regardless of its physical location, if you have the right to secure the document or a copy thereof from another

2

person or entity, either public or private, including, but not limited to, your legal counsel, having actual possession thereof.

      I.     "**All DOCUMENTS**" shall mean every document, whether an original or copy, as above defined, and every such document or writing which can be located or discovered by reasonably diligent efforts.

      J.     "**Refer**," "**relate**," "**reflect**," "**regard**," "**refer to**," "**relate to**," "**relating to**," and "**concerning**" (or forms thereof) shall mean directly or indirectly, in whole or in part, connected with, commenting on, relevant to, impinging or impacting upon, affecting, responding to, showing, describing, representing, supporting, contradicting, stating, mentioning, showing, evaluating, recording, noting, analyzing, or constituting.

      K.     "**RELEVANT TIME PERIOD**" or "**LIMITATIONS PERIOD**" shall mean the period of time beginning January 1, 2018 through the present.

## DOCUMENTS TO BE PRODUCED

1.      A true and complete listing of the names and contact information for any PUTATIVE CLASS MEMBER who worked on projects for TUG HILL for the RELEVANT TIME PERIOD.  Contact information shall include the most current address, email address, and phone number.

2.      Any and all DOCUMENTS that relate or refer to the following categories of information pertaining to PUTATIVE CLASS MEMBERS identified in response to Request No. 1, regardless of whether the work was performed on TUG HILL projects, during the RELEVANT TIME PERIOD:

   (a)   Payments made by and/or between RUSCO and TUG HILL (or another contracting entity, if at all), as well as payments made by and/or between RUSCO / TUG HILL / another contracting entity, and PUTATIVE CLASS MEMBERS;

   (b)   The classification of or decision to classify PUTATIVE CLASS MEMBERS for wage and hour purposes;

   (c)   The pay rate or rates, bonuses, benefits, and any other form of remuneration offered to and/or provided to PUTATIVE CLASS MEMBERS, including negotiations surrounding the same;

   (d)   Onboarding to the RUSCO platform;

   (e)   Any training or instructional materials provided to / received by the PUTATIVE CLASS MEMBERS;

   (f)   Policies, procedures, guidelines, or instructions provided to / received by PUTATIVE CLASS MEMBERS;

   (g)   Contracts or agreements by and/or between RUSCO and TUG HILL (or another contracting entity, if at all) related to PUTATIVE CLASS MEMBERS, as well as contracts or agreements between RUSCO / TUG HILL / another contracting party, and PUTATIVE CLASS MEMBERS;

   (h)   The names of RUSCO personnel who communicated with PUTATIVE CLASS MEMBERS;

4

(i)     The names of TUG HILL and/or another contracting entity with whom RUSCO personnel communicated related to PUTATIVE CLASS MEMBERS;

(j)     The names of locations or projects on which PUTATIVE CLASS MEMBERS performed work and for how long, while on the RUSCO platform;

(k)     Communications, including emails, text messages, chat or other electronic applications or products, involving or about PUTATIVE CLASS MEMBERS;

(l)     Tax documents related to PUTATIVE CLASS MEMBERS; or

(m)     Recruitment/advertisements/promotional materials related to the RUSCO platform and/or directed to PUTATIVE CLASS MEMBERS;

(n)     For the avoidance of doubt, any communications that relate or refer to any of the categories above.

3.   All emails, text messages, chat or communications in other electronic applications, or other methods of communication, by, between or among RUSCO workers and PLAINTIFF or any PUTATIVE CLASS MEMBER, as well as between PLAINTIFF and any PUTATIVE CLASS MEMBER.

4.   Any and all DOCUMENTS containing the following terms or phrases:

- "Fair Labor Standards Act"

- FLSA

- Misclassification

- LaStephen

- Rogers

- "Tug Hill"

- Overtime

- "wage and hour"

- "independent contractor"

- "IC"

- Gasser

5

- Blake

- Evad

- "Old Crow"

- Lackawanna

- Hillrock

- "Keith Stern"

5. Produce computer-readable data showing the wages and/or other compensation paid to PLAINTIFF or the PUTATIVE CLASS for work performed during the RELEVANT TIME PERIOD. If computer-readable data is not available, DOCUMENTS showing the wages and/or other compensation paid to PLAINTIFF and the PUTATIVE CLASS during the RELEVANT TIME PERIOD.

6. Produce all DOCUMENTS showing the locations where services were rendered by PLAINTIFF and PUTATIVE CLASS during the RELEVANT TIME PERIOD.

7. Produce all personnel records and/or onboarding records for PLAINTIFF.

8. Produce the contracts, agreements, and Master Services Agreements, along with any addendums thereto, with TUG HILL through which PLAINTIFF and the PUTATIVE CLASS MEMBERS worked during the RELEVANT TIME PERIOD.

9. Produce the DOCUMENTS that most accurately reflect the hours each PLAINTIFF and PUTATIVE CLASS MEMBER worked each day during the RELEVANT TIME PERIOD.

10. Produce the employment or related policies that applied to PLAINTIFF and PUTATIVE CLASS MEMBERS. This request includes, but is not limited to, all policies dealing with: attendance, tardiness, employee discipline, company holidays, vacation and/or sick pay, employee absences, payment of wages, payment of overtime, and recording of time worked.

11. Produce the handbooks, training programs, and any other DOCUMENTS provided to PLAINTIFF and PUTATIVE CLASS MEMBERS, which contain policies and procedures regarding the recording and/or payment of wages, bonuses, time worked, and overtime.

12. Produce the employee handbooks, training programs, and any other DOCUMENTS provided to PLAINTIFF and PUTATIVE CLASS MEMBERS, which contain corporate policies and procedures, codes of conduct, or guidelines of any kind.

13. Produce all DOCUMENTS reviewed in determining how to pay PLAINTIFF and PUTATIVE CLASS MEMBERS for their services on Tug Hill projects.

6

14.     Any and all DOCUMENTS reviewed in deciding to classify PLAINTIFF and PUTATIVE CLASS MEMBERS as independent contractors.

15.     Any and all DOCUMENTS that relate or refer to PLAINTIFF or PUTATIVE CLASS MEMBER's pay. This request includes, but is not limited to, communications describing any agreement with PLAINTIFF or PUTATIVE CLASS MEMBERS to perform work, raises or bonuses given to any PLAINTIFF or PUTATIVE CLASS MEMBERS, or compensation paid to any PLAINTIFF or PUTATIVE CLASS MEMBERS, etc. This request specifically does not seek any DOCUMENTS protected by the attorney-client and/or work product privileges.

16.     Any and all DOCUMENTS referring to or relating to any policy or practice of paying PLAINTIFF and PUTATIVE CLASS MEMBERS a day rate for their services.

17.     Any and all DOCUMENTS that contain your corporate policies and procedures regarding efforts to comply with the FLSA and associated regulations.

18.     Any and all invoices, bills, or other requests for payment exchanged with TUG HILL or any third party for any work performed by PLAINTIFF and/or PUTATIVE CLASS MEMBER.

19.     Any and all DOCUMENTS you exchanged with local, state, and/or federal government agencies related to allegations regarding failure to properly pay wages and overtime pay to PLAINTIFF and/or PUTATIVE CLASS MEMBERS, including but not limited to investigative materials, findings, questionnaires, orders, and/or reports.

20.     Any and all DOCUMENTS believed by you to support the contention that any PLAINTIFF and/or PUTATIVE CLASS MEMBER was paid on a "salary basis."

21.     Any and all DOCUMENTS believed by you to support the contention that any PLAINTIFF and/or PUTATIVE CLASS MEMBER was an independent contractor.

22.     Any and all DOCUMENTS evidencing PLAINTIFF or the PUTATIVE CLASS MEMBERS were compensated for weeks in which they did not perform work.

23.     Any and all DOCUMENTS relating to PLAINTIFF and PUTATIVE CLASS MEMBERS' job certifications, training, credentials, education, qualifications or any other documents relating to PLAINTIFF and PUTATIVE CLASS MEMBERS' skills, experience, or training.

24.     Any and all instructions directed to PLAINTIFFS and PUTATIVE CLASS MEMBERS, including, but not limited to: instructions concerning the methods PLAINTIFFS and PUTATIVE CLASS MEMBERS should use to perform services.

25.    Any and all contractor or employment manuals and policies in effect during the RELEVANT TIME PERIOD.

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT B

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4DB0

**IMPORTANT!   Please read this document carefully.   Section 14 describes how disputes between you and Workrise, if any, will be handled, if they cannot be resolved internally.   By accepting engagement as an independent professional or continuing to work through Workrise, you are agreeing to the terms of this Agreement, whether or not you sign this Agreement.   Workrise encourages you to raise any issues with your engagement promptly and to try to resolve them between yourself and your Workrise contact.   In the event that does not occur, Workise has adopted a program for resolving disputes with independent professionals through arbitration, rather than the court system, in order to provide you and Workise with an economical, speedy and conclusive method to resolve certain engagement-related disputes.   Arbitration is a private, informal process in which parties submit their disputes to an impartial person authorized to resolve the controversy by making a final and binding decision called an Award.**

## AGREEMENT BETWEEN INDEPENDENT PROFESSIONAL & WORKRISE FOR USE OF WORKRISE SERVICE

This Agreement Between Independent Professional & Workrise For Use Of Workrise Service (the "**Agreement**") constitutes a binding agreement between you, an independent professional ("**you**"), and the applicable wholly owned subsidiary of Workrise Technologies Inc. ("Workrise") (including but not limited to RUSCO Operating, LLC, Ally Consulting, LLC, Planning Thru Completion, LLC, Onshore Quality control Specialists, LLC, Worldwide Quality control Specialists, LLC, On and Offshore Quality Control Specialists, LLC, or Nationwide Quality Control Specialists, Inc.), and Workrise (collectively "**Workrise**" "**us**" or "**we**") governing your use of    the Service (as defined in the Workrise Terms of Service available at https://www.workrise.com/terms-of-service/) to provide freelance services to third party companies who are customers of Workrise (each a "**Company**" or collectively the "**Companies**"). You hereby agree: (a) to comply with this Agreement; and (b) that you have read,   understand, and agree to (i) the Workrise Terms of Service located at https://www.workrise.com/terms-of-service/ ("**Terms**"), (ii) the Workrise Privacy Policy located  at https://www.workrise.com/privacy / (the "**Privacy Policy**"), each of which are incorporated   into this Agreement by reference. You further acknowledge and agree that Workrise may, at any  time, in its sole discretion, modify the Terms or Privacy Policy. Any such modification will be  effective immediately upon public posting. Your continued use of Workrise following any such   modification constitutes your acceptance of the modified Terms or Privacy Policy. If there is a  conflict between this Agreement and the Terms or Privacy Policy, then this Agreement will govern  with respect to the conflicting terms only. Capitalized terms used but not defined in this   Agreement have the meaning specified in the Terms. You and Workrise (the "**Parties**") hereby agree as follows:

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4DB0

1. <u>Independent Professional</u>. By signing this Agreement, you are asserting that you are an independent professional and entrepreneur who wishes to: (a) digitize and modernize your business; (b) be introduced to new clients by Workrise; and (c) engage Workrise for its Service to accomplish these entrepreneurial goals.

2. <u>General</u>. Workrise provides the Service to digitize and market your business, including connecting you with Companies. Workrise does not provide professional services. Workrise offers information and a method for Companies to obtain, and you to provide, services, but does not and does not intend to provide such services. Workrise and you intend for you to provide services to Companies strictly as an independent professional, and not as an employee, worker, agent, joint venture, partner or franchisee of Workrise or any Company for any purpose.

3. <u>Project</u>.

    3.1. From time to time, Companies will post proposed projects via the Service, setting forth the nature of the services required (the "**Project**"). A Project proposed may include desired skills, location, date, start time (as applicable), project length (as applicable), proposed pay rate, invoicing terms and any required certifications ("**Project Details**"). If a Project becomes available in the location you have indicated on the Service, then you may be notified of the availability of the Project via the Service. You may express interest in such Project and if the Company accepts your expression of interest, then you will be notified via the Service and you will be responsible for completing the Project at the time, on the date, and at the place specified in the Project Details, unless otherwise agreed between you and the Company. Workrise does not guarantee any minimum number of Projects will be available to you at any time during the term of this Agreement.

    3.2. You agree that your name, phone number, and other contact information will be made available to the Company by Workrise after the Project is confirmed. Projects may not last for as long as originally set forth in the Project Details.

    3.3. Workrise is here to serve you – not vice-versa. Accordingly, Workrise has no control or any right to determine (a) when you use the Service, (b) if and when you log into the Service, (c) for which Projects you express interest or accept, if any, (d) what you charge for Projects (unless you fail to designate a fee, in which case the default fee is used), and (e) the manner or means by which you complete Projects. You and the Company solely negotiate and determine (x) when and where you perform Projects, (y) what you wear while performing projects, and (z) any additional bonuses or gratuities arising out of such Projects. You are solely responsible for costs or expenses incurred by you in connection with the performance of Projects.

4. <u>Fees</u>. The fee charged to a Company on your behalf ("**Professional Fee**") shall be the fee described in the Project Details unless you and the Company notify Workrise in writing prior to the completion of the Project that you and the Company have negotiated a different fee. Separate from, or in addition to, the Professional Fee, Workrise may also charge a fee for using the Services. You are responsible for the costs of any background checks, drug tests, or other expenses required by Companies in order for you to work on a Project, and such fees shall be deducted from any amounts owed to you. Unless otherwise directed by you in writing, Workrise will invoice the Company on your behalf for the Professional Fee according to the terms agreed

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4DB0

orward you the Professional Fee minus Workrise's service charge for your use of the Service (the "**Service Fee**"). The Service Fee shall be a percentage of the invoice amount. The applicable percentage can be found in your onboarding packet for the applicable project, unless you and Workrise negotiate and memorialize in a signed writing a different service charge. Workrise's role in the payment process is solely limited to payment processing and transmission between you and the Company. Accordingly, you accept the sole risk that a Company will not pay the invoice amount or Professional Fee for Projects completed. If for any reason the amount paid to you by Workrise exceeds the amount actually due, you shall, upon demand, pay all over-paid amounts to Workrise. Should you fail to pay Workrise the overpaid amounts, you agree to reimburse Workrise for all of its fees and expenses, including legal fees, associated with recovering the overpaid amounts from you.

5. <u>Interactions with Companies</u>. Any interactions or disputes between you and a Company are solely between you and that Company. Workrise and its licensors shall have no liability, obligation or responsibility for any interaction between you and any Company.

6. <u>License</u>. You irrevocably permit, authorize, grant and license Workrise the right to display, reproduce, record, modify, create derivative works of, and otherwise use, and permit others to use, your name, image, voice and/or likeness, and all materials created by or on behalf of Workrise that incorporate any of the foregoing, to advertise and promote the Service, in order to identify you to Companies, and for any other purpose deemed appropriate by Workrise in its reasonable discretion (except to the extent prohibited by law) in perpetuity throughout the world without your further consent or any royalty, payment, or other additional compensation.

7. <u>Text Messaging</u>. You agree to Workrise's sending SMS text messages directly to you in order to facilitate the performance of Projects. Standard call or message charges or other charges from your phone carrier may apply to calls or text (SMS) messages Workrise sends to you. You may opt-out of receiving text (SMS) messages from Workrise by replying with the word "STOP" to a text message from Workrise, but you acknowledge that opting out of text (SMS) messages may impact your ability to use the Service.

8. <u>Relationship</u>. Neither this Agreement, nor your completion of Projects will create an association, partnership, joint venture, or relationship of principal and agent, master and servant, or employer and employee, between you and Workrise or you and the Company. Without limiting the generality of the foregoing, you are not authorized to bind Workrise to any liability or obligation or to represent that you have any such authority. You acknowledge that you are not entitled to workers' compensation benefits through the Company. You acknowledge and agree that you are obligated to report as income all compensation received by you from Companies arising out of or related to the Service. You agree to and acknowledge the obligation to pay all self employment and other taxes on such income.

9. <u>Representations and Warranties</u>. You represent and warrant to Workrise that (a) you have the legal right to perform Projects as contemplated by this Agreement in the United States, (b) you are fully-licensed and/or certified (to the extent required by law) and authorized to complete Projects within the jurisdiction in which you intend to work or in which a Project requires work,

DocuSign Envelope ID: 04C33C8F-9244-4A21-B227-22EE8A5A4DB0

nd qualifications to complete Projects, (c) you will perform Projects in a professional and diligent manner in accordance with best industry standards for similar services, (d) you will perform Projects in accordance with all applicable laws, rules, and regulations and (e) that all information you have provided (including but not limited to resume, education, interview materials, and references) are true and correct. You affirm under penalty of perjury that you are an incorporated entity or sole proprietorship that operates an independent business performing work the same as or similar to the Projects offered via the Service and, prior to engaging Workrise for the Service, you had multiple clients for which you performed projects the same as or similar to the Projects offered via the Service. As an independent professional, you are assuming the responsibilities of an employer for the performance of a Project, and you hereby affirm you are not entitled to, and are hereby waiving, any claim for workers compensation benefits under either Workrise's or a Company's workers' compensation insurance policy.

10. <u>Indemnification</u>. You will release, protect, indemnify and hold the Workrise and Company harmless from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses (including reasonable legal fees and costs) arising out of or resulting from (a) bodily injury, death, or property damage suffered by you or your employees, (b) your breach of any representation or warranty in this Agreement, (c) any reckless or intentionally wrongful act by you or your assistants, employees, contractors, agents or anyone acting on your behalf, or (d) a determination by a court or agency that you are an employee of Workrise or a Company.

<u>Workrise agrees to release, protect, indemnify and hold you harmless from and against</u> losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses (including reasonable legal fees and costs) arising out of or resulting from bodily injury, death, or property damage suffered by Workrise and Company.

11. <u>Third Parties</u>. You are solely responsible for completing Projects. Workrise is not responsible or liable for the actions or inactions of a Company or other third party in relation to Projects as completed by you. You understand, therefore, that by using the Service, you will be introduced to third parties for whom Workrise has not conducted any background check, that may be potentially dangerous, and that you use the Service at your own risk. WORKRISE HAS BEEN ENGAGED BY COMPANIES TO INTRODUCE YOU TO THEM FOR THE PURPOSES OF COMPLETING PROJECTS. WORKRISE WILL NOT ASSESS THE SUITABILITY, LEGALITY OR ABILITY OF ANY PROJECTS OR COMPANIES. RESPONSIBILITY FOR THE DECISIONS YOU MAKE REGARDING PROJECTS OFFERED VIA THE SERVICE (WITH ALL THEIR IMPLICATIONS) RESTS SOLELY WITH YOU. WORKRISE WILL NOT ASSESS THE SUITABILITY, LEGALITY OR ABILITY OF ANY SUCH THIRD PARTIES.

12. <u>Term; Termination</u>. This Agreement will be effective as of the date you indicate your acceptance by clicking "I AGREE" or upon digitally or physically signing the document, and will remain in effect until terminated as set forth in this Section. Workrise may terminate this Agreement by deleting your account on the Service, with or without notice. You may terminate this Agreement by providing written notice via certified mail to the Workrise offices located at 111 Congress Ave, Suite 900, Austin, TX 78701. Sections 1, 2, and 8 – 17 will survive termination of this Agreement.

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4DB0

13. Assignment. You may not assign this Agreement without Workrise's prior, written consent. Workrise may assign its rights and obligations under this Agreement at any time.

14. Dispute Resolution. In the interest of resolving any disputes between you and Workrise, or you and Company--an intended third party beneficiary of this Dispute Resolution Section--in the most expedient and cost effective manner, the Parties affirmatively agree that every claim, controversy, allegation, or dispute arising out of or relating in any way to the Project, the Project Details, or this Agreement ("Work Dispute"), both past and future, including without limitation before the Project, after the completion of the Project, and after abandonment of the Project, shall be resolved by binding arbitration administered by one arbitrator through the American Arbitration Association. This agreement to arbitrate shall extend to any entity you sue concerning a Work Dispute or Engagement Dispute (as defined below) and allege is your employer, jointly or otherwise. Such entity is likewise an intended third party beneficiary of this Dispute Resolution Section.

14.1   Mutual Agreement and Covered Claims.   This Agreement to arbitrate is mutual, covering all past and future claims, controversies, allegations, or disputes (including disputes over the enforceability, arbitrability, interpretation, and scope of this Agreement) that (1) you may have against Workrise and/or any Company, and to any other entity you sue or (2) that Workrise may have against you, regarding your engagement and/or termination of engagement with Workrise, including any and all claims of misclassification, discrimination, harassment or retaliation on the basis of race, color, sex, age, national origin, ancestry, citizenship, religion, military or veteran status, disability, or any other protected characteristic under federal, state or local law, claims for compensation, hours of work, wages, pay, overtime compensation, classification as exempt or nonexempt for overtime purposes, benefits, hours and pay, consumer reports, background checks, and claims for invasion of privacy or for the protection of biometric information, including, but not limited to, claims under the Age Discrimination in engagement Act, the Older Workers Benefit Protection Act, Title VII of the Civil Rights Act of 1964, the American With Disabilities Act, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Contractor Retirement Income Security Act, the Fair Labor Standards Act, the Fair Credit Reporting Act, and all local, state, or federal discrimination, harassment, retaliation, wage and hour, background check and biometric screening laws ("Engagement Disputes."). The Parties mutually agree that they shall resolve all Work or Engagement Disputes by binding arbitration, without regard to whether the Work or Engagement Disputes relate to acts, omissions, or other facts that occurred prior to the date of this Agreement.

All references to "you" include you as well as your estate or any other person or entity claiming by or through you . All references to "Company" include any Workrise customer with whom (1) you accepted work with or otherwise performed services on behalf of or (2) you claim/allege is your employer, jointly with Workrise or otherwise, including each of their respective affiliates, subsidiaries or parent companies, and any of their respective officers, directors, members, owners, partners, employees, or managers. Indeed, each such entity or individual is expressly intended to be third-party beneficiaries of this Agreement. Either you or Workrise may be referred to as "Party" and both by "Parties."

Each Party's mutual promise to resolve claims by arbitration in accordance with the provisions of this Agreement between the parties constitutes consideration for the

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4D80
: shall survive the termination of your engagement or other contractual relationship and the expiration of any benefit plan. Nothing contained in this Agreement shall be construed to prevent or excuse you from using Workrise's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the use of such procedures, if such exist.

**JURY WAIVER: ALTHOUGH YOU AND WORKISE WAIVE NO CLAIMS THAT MAY BE ASSERTED AGAINST THE OTHER, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY AND ALL RIGHTS TO HAVE A TRIAL BEFORE A JUDGE OR JURY IN A COURT OF LAW AND AGREE TO PROCEED EXCLUSIVELY IN ARBITRATION FOR CLAIMS COVERED BY THIS AGREEMENT.**

14.2. Claims Not Covered by Agreement to Arbitrate. The Parties agree that neither shall initiate or prosecute any lawsuit or administrative action in any way related to any Work or Engagement Dispute covered by this Agreement, except that this Agreement does not prohibit the filing of the following: (1) an individual action in small claims court; (2) claims by Workrise to prevent the disclosure of its confidential, proprietary, or trade secret information, or to remedy a breach of fiduciary duty, all for which Workrise may seek and obtain equitable, injunctive, declaratory or other relief from a court of competent jurisdiction; (3) an administrative charge to any federal, state or local equal opportunity or fair engagement practices agency; (4) an administrative charge to the National Labor Relations Board; (5) an agency charge or complaint to exhaust an administrative remedy; (6) any other charge filed with or communication to a federal, state or local government office, official or agency; or (7) any claim by Workrise to recoup a debt owed by you under a written agreement or relating to the return of Workrise's assets; or (8) a suit in a court of law to address an intellectual property infringement claim. In addition, potential claims for workers' compensation and unemployment compensation benefits are not covered by this Agreement.

14.3 The Federal Arbitration Act and Governing Law. You acknowledge that Workrise is engaged in interstate commerce. Thus, you and the Workrise agree that the Federal Arbitration Act, 9 U.S.C. § 1 et. Seq. ("FAA"), applies to this Agreement and that this Agreement shall be enforceable pursuant to and interpreted in accordance with the FAA. However, in the event the FAA may be found not to apply by a court or other binding adjudicative authority, you and Workrise agree that the Texas Arbitration Act shall apply to any covered dispute between them.

The arbitrator must resolve any disputes covered by this Agreement including, but not limited to, disputes related to the applicable statutes of limitations and the law of remedies, in accordance with the laws of the State of Texas and is without jurisdiction to apply any different substantive law or law of remedies unless otherwise agreed to in writing by both parties.

Any dispute over the arbitrability of any claim or controversy arguably subject to this Agreement, including its formation, interpretation, applicability, or enforceability, will also be resolved by arbitration conducted in accordance with this Agreement.

14.4. Time Period for Commencing Arbitration. You and Workrise agree that any claim for arbitration must be brought within one year from the date the claim accrues or within the time limit established by the applicable substantive legal statute of limitations, whichever is shorter.

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4DB0

andatory Mediation. Prior to filing a demand for arbitration, you must notify Workrise of any dispute or potential claim in writing, via a letter addressed to the legal department of Workrise, to provide the parties with an informal opportunity to resolve the issue or dispute amicably before incurring the time or expense of arbitration ("Pre-Arbitration Procedure"). The notification to initiate this Pre-Arbitration Procedure must be sent to Workrise's legal department via a letter addressed to the legal department of Workrise (111 Congress, Suite 900, Austin, TX 78701) or via email to legal@workrise.com at least thirty (30) calendar days before you file a demand for arbitration or otherwise provides notice of your intent to arbitrate.

If you and Workrise are not able to informally resolve the dispute through Pre-Arbitration Procedure, you and Workrise agree they will mediate their dispute within sixty (60) days, in person, before a mutually agreeable mediator ("Mediation Procedures"). You may not file a demand for arbitration until a mediation has been concluded and these Mediation Procedures have been fully followed. An arbitration demand filed before complying with the Pre-Arbitration Procedure and Mediation Procedures will be without jurisdiction and must be immediately dismissed, and a request for such dismissal by Workrise or any failure to pay arbitration fees pending such dismissal cannot be construed as a waiver of any kind by Workrise of its rights under this Agreement. Unless otherwise agreed to by the parties, each side shall provide two (2) potential mediators for consideration. The parties shall then jointly select a mediator who shall preside over the mediation ("Mediation Procedures"). All parties are required to attend the mediation in person. For the avoidance of doubt, failure by you to attend the mediation in person constitutes a violation of the Mediation Procedures.

If you or your agents or representatives fail to follow this Pre-Arbitration Procedure or Mediation Procedures, violate the Pre-Arbitration Procedure or Mediation Procedures, or otherwise fail to agree to mediate, Workrise may, at its option, enforce the Pre-Arbitration Procedure or Mediation Procedures in a state or federal court of competent jurisdiction in Travis County, Texas, and you shall have to pay all fees and costs incurred by Workrise in enforcing this Pre-Arbitration Provision or Mediation Procedures. These fees and costs shall include, but are not limited to, attorneys' fees, court costs, and arbitration fees and costs, including arbitrator's fees. The Pre-Arbitration Procedure and/or Mediation Procedures, as described in this provision, do not commence an arbitration claim or toll any limitations period.

14.6  Initiating Arbitration and Arbitration Rules. Arbitration shall be conducted before a single arbitrator at the American Arbitration Association ("AAA"). Arbitration can be initiated in two ways: (1) Either Party can voluntarily agree to submit the dispute to arbitration, through a joint request filed with the AAA or (2) the aggrieved Party can file a written arbitration demand with the AAA, demanding arbitration of the dispute, but only after complying with the Pre-Arbitration Procedure and Mandatory Mediation Procedures. Any arbitration demands filed before the parties have engaged in the Pre-Arbitration Procedure and Mediation Procedures shall be considered null and void by the parties, the AAA, and any arbitrator assigned to adjudicate them, and any such demands must be withdrawn and resubmitted as new after the Pre-Arbitration Procedure and Mediation Procedures have been completed. Claims may be submitted electronically through the AAA's website: www.adr.org and shall use the AAA's claim form.

14.7 Arbitration Procedures. Arbitration shall be conducted before a single arbitrator at AAA and shall be conducted in accordance with the procedures set forth in the AAA engagement Arbitration Rules and Mediation Procedures ("AAA Arbitration Procedures"), unless those rules conflict with this Agreement, in which case the terms of this Agreement control. The

DocuSign Envelope ID: 04C33C8F-9244-4A21-B227-22EE8A5A4DB0

o will be selected by the AAA Arbitration Procedures. The Parties agree that the arbitrator shall issue an interim reasoned award setting forth the findings of fact, conclusions of law, and the reasons supporting the arbitrator's decision ("Reasoned Award") on which the Parties may comment for at least seven days concerning the law and reasoning of the Interim Award before an appealable, reasoned award ("Appealable Award") is issued. The Parties further agree that the Appealable Award may be appealed pursuant to the AAA's Optional Appellate Arbitration Rules ("Appellate Rules"); that the Interim and Appealable Awards shall, at a minimum, be reasoned awards setting forth the findings of fact, conclusions of law, and the reasons supporting the arbitrator's decision; that the Appealable Award may be overturned upon de novo review of legal errors and for clear errors of fact; and that the Appealable Award shall not be considered a final award until after the time for filing the notice of appeal pursuant to the Appellate Rules has expired. Appeals must be initiated within thirty (30) days of receipt of the Appealable Award, as defined by Rule A-3 of the Appellate Rules, by filing a Notice of Appeal with any AAA office and notifying the other Party in writing. Following the appeal process, the decision rendered by the AAA appellate tribunal may be entered in any court having jurisdiction thereof.

14.8 <u>Discovery Procedures</u>. Unless otherwise mutually agreed in writing between the Parties, discovery is limited to no more than ten interrogatories, ten requests for admission, ten requests for production, and eight hours of depositions per side. Third party subpoenas may be issued only after a showing of good cause, upon the arbitrator's order allowing any such third-party subpoena to issue.

If a discovery dispute arises during arbitration, the parties shall be required to confer in good faith via telephone conference to resolve the dispute by agreement. Only after conferring via telephone conference, and only if the parties are unable to reach an agreement, the Party asserting the dispute shall contact the arbitrator in writing to advise the arbitrator of the dispute. If a Party fails to confer as required by this paragraph before filing a motion to compel, discovery motion, or any similar motion or request, the motion or request shall be stricken and the arbitrator shall lack jurisdiction to consider it. Once the Parties have conferred by telephone conference as required by this paragraph, the arbitrator shall request a brief statement from each party outlining their respective positions. Such statements shall not exceed more than 2 pages, and the arbitrator shall not consider any other evidence or written argument. The arbitrator shall either decide the matter based on the submissions or schedule a conference call with counsel.

Except as otherwise provided in this Paragraph, the arbitrator will have the authority to decide all discovery and procedural matters and to allow discovery in accordance with the AAA Arbitration Procedures.

14.9 <u>Arbitration Fees and Costs</u>. If Workrise files an arbitration claim against you, Workrise shall pay all arbitration fees. If you file an arbitration claim, you shall pay the AAA a filing fee of $200 when the claim is filed; Workrise shall pay for the remainder of any AAA filing fees and all other arbitration costs; and if Workrise prevails in the arbitration, you agree to pay Workrise for all of its associated costs including arbitration filing and case-management fees, deposition transcript fees, travel and copying costs.

You also agree to pay Workrise for all fees and costs, including its attorneys' fees, associated with any legal challenge by you as to the validity or enforceability of this Agreement, if Workrise prevails in having your dispute compelled to arbitration, whether by agreement, court order, or otherwise. You also agree to pay Workrise for all fees and costs, including its

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4DB0

llure to bring all applicable claims by arbitration in accordance with the provisions of this Agreement.

Notwithstanding any other provision in this Section, Workrise will not pay your share of the arbitration fees if the arbitrator finds that either your claim or the relief demanded is frivolous or brought for an improper purpose, as measured by the standards set forth in Federal Rule of Civil Procedure 11. The parties agree that a claim is frivolous or brought for an improper purpose if a claim is brought by you if you never performed services for Workrise during the statute of limitations period applicable to the underlying claim. In such a case, you shall be entirely liable for arbitration fees and costs borne by the parties and you agree to reimburse Workrise for any fees and costs it incurred – including arbitration fees and costs and any other fees that are otherwise attributable to you under the AAA Arbitration Procedures.

14.10 _Arbitration Venue_.  The Parties will select a mutually agreeable arbitration location.  If the Parties cannot agree on an arbitration location, the arbitration will be held in Austin, Texas, or alternatively, Workrise, at its sole discretion, may choose to arbitrate the claim in the metro area that is closest to where work was last performed by you.

14.11 _Arbitrator's Authority_.  Unless otherwise agreed to by the parties, the arbitrator shall be an attorney licensed to practice law in the location where the arbitration proceeding will be conducted or a former judge who presided in the jurisdiction where the arbitration will be conducted, and shall have experience in labor or independent contractor's engagement matters. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim. The arbitrator shall have the authority to award, on an individual basis only and not a class basis, the same damages and other relief that would have been available to you as an individual claimant in court pursuant to applicable law. Except as otherwise provided in this Agreement, the arbitrator shall have jurisdiction to hear and rule on any pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person as the arbitrator deems necessary.

The arbitrator has no authority to award punitive damages, and each Party hereby waives any right to seek or recover punitive damages with respect to any dispute resolved by arbitration ("Punitive Damages Clause"), except where an applicable statute allows for punitive damages. If the Punitive Damages Clause of this Agreement is found to be invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision in this Agreement or otherwise invalidate or render unenforceable such term or provision.

14.12 _Dispositive Motions and Offers of Judgment_.  All parties to the arbitration shall have the right to file motions dispositive of all or part of any claim. But before filing any such dispositive motion, the parties shall be required to confer in good faith via telephone conference regarding the dispositive motion to attempt to narrow the issues for the arbitrator's consideration.  Only after conferring via telephone conference, and only if the Parties are unable to reach an agreement, the Party that desires to file a dispositive motion may file it.  If a Party fails to confer as required by this paragraph before filing a dispositive motion, or before filing any similar motion or request, the motion or request shall be stricken and the arbitrator shall lack jurisdiction to consider it. Once the Parties have conferred by telephone conference as required by this paragraph, the dispositive motion or similar request may be submitted and considered.  The Parties shall also have the right to submit binding offers of judgment. The standards set forth under Federal Rules of Civil Procedure 12, 56, and

DocuSign Envelope ID: 04C33C8F-9244-4A21-B227-22EE8A5A4DB0

ons and offers of judgment and the Arbitrator must take notice of the standards, burdens, effect and applicable case law under Federal Rules of Civil Procedure 12, 56 and 68 when considering such motions and binding offers of judgment. Except as otherwise set forth in this Paragraph, the Federal Rules of Civil Procedure shall not otherwise apply to the arbitration proceedings.

14.13 <u>Legal Representation and Attorneys' Fees</u>.   Each Party may be represented by an attorney at any arbitration covered by this Agreement. Other than as set forth elsewhere in this Agreement, each Party will pay its own attorneys' fees; however, the arbitrator may, in his or her discretion, permit the prevailing Party to recover attorneys' fees and costs to the extent permitted by applicable law or this Agreement.

14.14 <u>Arbitration Proceedings, Hearings and Decisions.</u>   All information and documents obtained during the arbitration will be treated as confidential and used only for purposes of the proceeding. The Parties agree to negotiate in good faith and submit an agreed protective order to the arbitrator before making any potentially confidential disclosures. In the event that the Parties cannot agree on a form of protective order, the Parties agree to submit separate proposed protective orders and seek an extension of discovery and other deadlines, if necessary, to allow the arbitrator to enter a protective order before disclosures are made. To the extent the Parties do not engage in this process before making disclosures, all documents and information obtained during the arbitration are presumed to be confidential and shall not be shared outside of the arbitration or filed in court.  The Parties shall maintain the confidential nature of the arbitration proceeding and the arbitration award, including any Reasoned Award, and including the arbitration hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits and any arbitration appeal, with the written consent of the Parties, or unless otherwise required by law or judicial decision.

The arbitrator shall require both sides to identify their witnesses and exhibits at least fourteen days in advance of any evidentiary hearing; shall permit cross-examination of each witness presented at such hearings; and shall allow for post-hearing briefs if requested by either Party.

The arbitrator's Reasoned Award, Appealable Award, or any final decision by a AAA appellate tribunal shall be final and binding upon the Parties, except that both Parties shall have the right to appeal to the appropriate court on any basis permitted by the FAA.

14.15 <u>Class Action, Collective Action and Representative Action Wavier ("Class Action Waiver")</u> Any claim must be brought solely in a Party's individual capacity, and not as a plaintiff or class member in any purported class action, collective action, representative action, mass action, multiple plaintiff proceeding or similar proceeding (together a "Class Action"). You and Workrise expressly waive any right or ability to bring, assert or maintain any Class Action in court, arbitration or any other forum.  You and Workrise agree not to participate in either: (1) a Class Action against each other as either as a class or collective action representative or member; or (2) a Class Action against any Company as either a class or collective action representative or member.  You and Workrise further waive any right or ability to join or to consolidate claims or discovery with any other person or entity.

No arbitrator shall have the authority to conduct any arbitration in violation of this Agreement, including but not limited to its Pre-Arbitration Procedures. Further, unless both you and Workrise agree otherwise, the arbitrator shall not have authority to combine or aggregate multiple persons' or entities' claims or discovery, to conduct any Class Action or to

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4DB0

, not a party to the arbitration. **Any claim that all or part of this Class Action Wavier is unenforceable, unconscionable, inapplicable, void or voidable shall be determined only by a court of competent jurisdiction and not by the arbitrator.**

**THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER, AND THAT YOU MAY BRING CLAIMS AGAINST A COMPANY, ONLY IN THEIR INDIVIDUAL CAPACITIES AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, OR COLLECTIVE OR REPRESENTATIVE PROCEEDING. THE PARTIES UNDERSTAND AND CHOOSE TO HAVE CLAIMS UNDER THIS AGREEMENT DECIDED INDIVIDUALLY, THROUGH ARBITRATION.**

14.16 <u>Agreement Term and Amendment.</u> This Agreement, which covers all past and future claims, is effective as of the date you indicate your acceptance by signing the document, either physically or digitally, or upon indicating your acceptance by clicking "I Agree" to the Agreement on Workrise's website. **ALTERNATIVELY, THIS AGREEMENT SHALL BE EFFECTIVE IF YOU REMAIN A CONTRACTOR OF WORKRISE FOR MORE THAN 45 DAYS AFTER RECEIPT OF THE AGREEMENT, EVEN IF YOU DO NOT SIGN IT. UPON SUCH OCCURRENCE, YOU WILL BE DEEMED TO HAVE ASSENTED TO THE AGREEMENT.**

This Agreement shall survive the engagement or other relationship between you and Workrise and shall apply to any covered claim whether it arises or is asserted during or after termination of your engagement or other relationship with Workrise or the expiration of any benefit plan. This Agreement constitutes the complete agreement of the Parties on the subject of arbitration of covered claims and supersedes any prior or contemporaneous oral or written agreement or understanding. Workrise shall have the right to prospectively terminate the provisions of this Agreement. Termination is not effective for claims which accrued prior to the date of the termination. You understand that by signing below you are knowingly and voluntarily agreeing to the terms of this arbitration provision. You further acknowledge and understand that, unless you are engaged in California, by accepting engagement through Workrise and continuing to work through it, you agree to be bound by the terms of this arbitration provision as provided above, whether you sign this acknowledgement or not.

15. <u>Confidential Information.</u> You must keep Workrise's and Company's confidential information absolutely confidential, except as required or provided by law, including but not limited to information about other Companies, Projects, Project Details and Workrise's business model. This section does not apply to information that: (a) was publicly known and made generally available in the public domain prior to the time of disclosure by Workrise or Company; (b) becomes publicly known and made generally available after disclosure by Workrise or Company to you through no action or inaction on your part, (c) is already in your possession at the time of disclosure, as shown by your files and records; or (d) is obtained by you from a third party without a breach of the third party's obligations of confidentiality.

16. <u>Change of Company Name.</u> Both parties agree that Workrise has its own right to change the name of the company from time to time. It is agreed furthermore that this agreement shall keep in effect after Workrise has the name changed pursuant to the relevant provisions of laws and regulations. It is unnecessary to resign this Agreement only to reflect the change of the company's name. Workrise shall notify you if the company's name is changed. The notification

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4DB0

dment to this agreement. No further act is needed from either party.

17. <u>Miscellaneous</u>. If any provision of the Agreement, including any provision of the Dispute Resolution section, is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions will be enforced to the fullest extent under law. Workrise's failure to enforce any right or provision in this Agreement will not constitute a waiver of such right or provision unless acknowledged and agreed to by Workrise in writing. This Agreement, with the Terms and the Privacy Policy, comprises the entire agreement between you and Workrise and supersedes all prior or contemporaneous negotiations, discussions or agreements, whether written or oral, between the Parties regarding the subject matter contained in this Agreement.

***Signature Page Follows***

DocuSign Envelope ID: 04C33C6F-9244-4A21-B227-22EE8A5A4DB0

In witness whereof, the parties hereto have knowingly and voluntarily executed this

Agreement to be effective as of ___5/23/2022_____ ____, 20____.


**PROFESSIONAL:**                       _____
                                        (Name of business entity)

                                        ████████████████████████████████

                                        Title: Owner


**WORKRISE:**                           RUSCO Operating, LLC;
                                        Ally Consulting, LLC; or
                                        Planning Thru Completion, LLC
                                        Onshore Quality control Specialists, LLC
                                        Worldwide Quality control Specialists, LLC
                                        On and Offshore Quality Control Specialists,
                                        LLC
                                        Nationwide Quality Control Specialists, Inc.


                                        By: Workrise Technologies, Inc., the Managing
                                        Member of RUSCO Operating, LLC; Ally
                                        Consulting, LLC and/or Planning Thru
                                        Completion, LLC

                                        By:  *[signature]*

                                        Name: Xuan Yong
                                        Title: President & CEO

# ATTACHMENT C

DocuSign Envelope ID: 53DC1950-BDA0-45D0-A1AF-766B594AF7CC

**IMPORTANT! Please read this document carefully. Section 14 describes how disputes between you and Workrise, if any, will be handled, if they cannot be resolved internally. By accepting engagement as an independent professional or continuing to work through Workrise, you are agreeing to the terms of this Agreement, whether or not you sign this Agreement. Workrise encourages you to raise any issues with your engagement promptly and to try to resolve them between yourself and your Workrise contact. In the event that does not occur, Workrise has adopted a program for resolving disputes with independent professionals through arbitration, rather than the court system, in order to provide you and Workrise with an economical, speedy and conclusive method to resolve certain engagement-related disputes. Arbitration is a private, informal process in which parties submit their disputes to an impartial person authorized to resolve the controversy by making a final and binding decision called an Award.**

## AGREEMENT BETWEEN INDEPENDENT PROFESSIONAL & WORKRISE FOR USE OF WORKRISE SERVICE

This Agreement Between Independent Professional & Workrise For Use Of Workrise Service (the "**Agreement**") constitutes a binding agreement between you, an independent professional ("**you**"), and the applicable subsidiaries of Workrise Technologies Inc. (including but not limited to RUSCO Operating, LLC, Ally Consulting, LLC, Onshore Quality Control Specialists, LLC, Worldwide Quality Control Specialists, LLC, On and Offshore Quality Control Specialists, LLC, and Nationwide Quality Control Specialists, Inc.) ) (collectively "**Workrise,**" "**us**" or "**we**") governing your use of the Service (as defined in the Workrise Terms of Service available at https://www.workrise.com/terms-of-service/) to provide freelance services to third-party companies who are customers of Workrise (each a "**Company**" or collectively the "**Companies**"). You hereby agree: (a) to comply with this Agreement; and (b) that you have read, understand, and agree to (i) the Workrise Terms of Service located at https://www.workrise.com/terms-of-service/ ("**Terms**"), and (ii) the Workrise Privacy Policy located at https://www.workrise.com/privacy/ (the "**Privacy Policy**"), each of which is incorporated into this Agreement by reference. You further acknowledge and agree that Workrise may, at any time, in its sole discretion, modify the Terms or Privacy Policy. Any such modification will be effective immediately upon providing notice of such modification. Your continued use of Workrise following any such modification constitutes your acceptance of the modified Terms or Privacy Policy. If there is a conflict between this Agreement and the Terms or Privacy Policy, then this Agreement will govern with respect to the conflicting terms only. Capitalized terms used but not defined in this Agreement have the meanings ascribed to them in the Terms. You and Workrise (collectively the "**Parties**" and each individually a "**Party**") hereby agree as follows:

1. <u>Independent Professional</u>. By signing this Agreement, you are asserting that you are an independent professional and entrepreneur who wishes to: (a) digitize and modernize your

business; (b) be introduced to new clients by Workrise; and (c) engage Workrise for its Service to accomplish these entrepreneurial goals.

2. <u>General</u>. Workrise provides the Service to digitize and market your business, including by connecting you with Companies. Workrise does not provide professional services. Workrise offers information and a method for Companies to obtain, and you to provide, services, but does not and does not intend to provide such services. Workrise and you intend for you to provide services to Companies strictly as an independent professional, and not as an employee, worker, agent, joint venturer, partner or franchisee of Workrise or any Company for any purpose.

3. <u>Project</u>.

3.1. From time to time, Companies will post proposed projects via the Service, setting forth the nature of the services required (each a "**Project**"). A Project proposed may include desired skills, location, date, start time (as applicable), project length (as applicable), proposed pay rate, invoicing terms and any required certifications ("**Project Details**"). If a Project becomes available in the location you have indicated on the Service, then you may be notified of the availability of the Project via the Service. You may express interest in such Project, and if the Company accepts your expression of interest then you will be notified via the Service and will be responsible for completing the Project at the time, on the date, and at the place specified in the Project Details, unless otherwise agreed between you and the Company. Workrise does not guarantee any minimum number of Projects will be available to you at any time during the term of this Agreement or that you will be offered an opportunity to work on any Project.

3.2. You agree that your name, phone number, and other contact information will be made available to the Company by Workrise after the Project is confirmed. Projects may not last for as long as originally set forth in the Project Details.

3.3. Workrise is here to serve you – not vice-versa. Accordingly, Workrise has no control or any right to determine (a) when you use the Service, (b) if and when you log into the Service, (c) which Projects you express interest or accept, if any, (d) what you charge for Projects (unless you fail to designate a fee, in which case the default fee is used), and (e) the manner or means by which you complete Projects. You and the applicable Company solely negotiate and determine (x) when and where you perform Projects, (y) what you wear while performing projects or the tools you will use, and (z) any additional bonuses or gratuities arising out of such Projects. You are solely responsible for costs or expenses incurred by you in connection with the performance of Projects.

4. <u>Fees</u>. The fee charged to a Company on your behalf (the "**Professional Fee**") shall be the fee described in the Project Details unless you and the Company notify Workrise in writing prior to the completion of the Project that you and the Company have negotiated a different fee. Separate from, or in addition to, the Professional Fee, Workrise may also charge a fee for using the Services. You may  also be responsible for the costs of any background checks, drug tests, or other expenses required by Companies in order for you to work on a Project, and such fees may be   deducted from any amounts owed to you. Unless otherwise directed by you in writing, Workrise may invoice the Company on your behalf for the Professional Fee according to the terms agreed to in the Project Details. In these cases, Workrise will forward you the Professional Fee minus Workrise's service charge for your use of the Service (the "**Service Fee**"). The Service

DocuSign Envelope ID: 53DC1950-BDA0-45D0-A1AF-766B594AF7CC

Fee shall be a percentage of the invoice amount. The applicable percentage can be found in your onboarding packet for the applicable Project, unless you and Workrise negotiate and memorialize in a signed writing a different service charge. Workrise's role in the payment process is limited solely to payment processing and transmission between you and the applicable Company. Accordingly, you accept the sole risk that a Company will not pay the invoice amount or Professional Fee for Projects completed. Many Companies have time limits after which they will not accept invoices for payment for Professional Fees. Accordingly, you agree to timely provide your submission of Professional Fees for processing by Workrise. In no event shall Workrise be required to pay your Professional Fees that are submitted by you to Workrise more than sixty (60) days after you performed any of the services for such Professional Fees. If for any reason the amount paid to you by Workrise exceeds the amount actually due, you shall, upon demand, pay all overpaid amounts to Workrise. Should you fail to pay Workrise the overpaid amounts, you agree to reimburse Workrise for all of its fees and expenses, including legal fees, associated with recovering the overpaid amounts from you.

5. Interactions with Companies. Any interactions or disputes between you and a Company are solely between you and that Company. Workrise and its licensors shall have no liability, obligation or responsibility for any interaction between you and any Company.

6. License. You irrevocably permit, authorize, grant and license Workrise the right to display, reproduce, record, modify, create derivative works of, and otherwise use, and permit others to use, your name, image, voice and/or likeness, and all materials created by or on behalf of Workrise that incorporate any of the foregoing, to advertise and promote the Service, in order to identify you to Companies, and for any other purpose deemed appropriate by Workrise in its reasonable discretion (except to the extent prohibited by law) in perpetuity throughout the world without your further consent or any royalty, payment, or other additional compensation.

7. Text Messaging. You agree to Workrise's sending SMS text messages directly to you in order to facilitate the performance of Projects. Standard call or message charges or other charges from your phone carrier may apply to calls or text (SMS) messages Workrise sends to you. You may opt-out of receiving text (SMS) messages from Workrise by replying with the word "STOP" to a text message from Workrise, but you acknowledge that opting out of text (SMS) messages may impact your ability to use the Service.

8. Relationship. Neither this Agreement nor your completion of any Projects will create an association, partnership, joint venture, or relationship of principal and agent, master and servant, or employer and employee, between you and Workrise or you and the Company. Without limiting the generality of the foregoing, you are not authorized to bind Workrise to any liability or obligation or to represent that you have any such authority. You acknowledge that you are not entitled to workers' compensation benefits through the Company. You acknowledge and agree that you are obligated to report as income all compensation received by you from Companies arising out of or related to the Service. You agree to and acknowledge the obligation to pay all self-employment and other taxes on such income.

DocuSign Envelope ID: 53DC1950-BDA0-45D0-A1AF-766B594AF7CC

9. <u>Representations and Warranties</u>. You represent and warrant to Workrise that (a) you have the legal right to perform Projects as contemplated by this Agreement in the United States, (b) you are fully licensed and/or certified (to the extent required by law) and authorized to complete Projects within the jurisdiction in which you intend to work or in which a Project requires work, and have the required skill, experience, and qualifications to complete Projects, (c) you will perform Projects in a professional and diligent manner in accordance with best industry standards for similar services, (d) you will perform Projects in accordance with all applicable laws, rules, and regulations (e) all information you have provided to Workrise or a Company (including but not limited to resume, education, interview materials, and references) is true and correct and (f) you will carry all required workers' compensation insurance or other bonding requirements pursuant to applicable law for your performance of work on the Projects. You affirm under penalty of perjury that you are an incorporated entity or sole proprietorship that operates an independent business performing work the same as or similar to the Projects offered via the Service and, prior to engaging Workrise for the Service, you had multiple clients for which you performed projects the same as or similar to the Projects offered via the Service. As an independent professional, you are assuming the responsibilities of an employer for the performance of a Project, and you hereby affirm you are not entitled to, and are hereby waiving, any claim for workers' compensation benefits under either Workrise's or a Company's workers' compensation insurance policy.

10. <u>Indemnification</u>. You hereby agree to release, protect, indemnify and hold Workrise and each Company you express interest in, accept or otherwise perform work for harmless from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses (including reasonable legal fees and costs) arising out of or resulting from (a) bodily injury, death, or property damage suffered by you or your employees, (b) your breach of any representation or warranty in this Agreement, (c) any reckless or intentionally wrongful act by you or your assistants, employees, contractors, agents or anyone acting on your behalf, and (d) a determination by a court or agency that you are an employee of Workrise or a Company.

Workrise agrees to release, protect, indemnify and hold you harmless from and against losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses (including reasonable legal fees and costs) arising out of or resulting from bodily injury, death, or property damage suffered by Workrise and Company.

11. <u>Third Parties</u>. You are solely responsible for completing Projects. Workrise is not responsible or liable for the actions or inactions of a Company or other third party in relation to Projects as completed by you. You understand, therefore, that by using the Service, you will be introduced to third parties for whom Workrise has not conducted any background check, that may be potentially dangerous, and that you use the Service at your own risk. WORKRISE HAS BEEN ENGAGED BY COMPANIES TO INTRODUCE YOU TO THEM FOR THE PURPOSES OF COMPLETING PROJECTS. WORKRISE WILL NOT ASSESS THE SUITABILITY, LEGALITY OR ABILITY OF ANY PROJECTS OR COMPANIES. RESPONSIBILITY FOR THE DECISIONS YOU MAKE REGARDING PROJECTS OFFERED VIA THE SERVICE (WITH ALL THEIR IMPLICATIONS) RESTS SOLELY WITH YOU. WORKRISE WILL NOT ASSESS THE SUITABILITY, LEGALITY OR ABILITY OF ANY SUCH THIRD PARTIES.

DocuSign Envelope ID: 53DC1950-BDA0-45D0-A1AF-766B594AF7CC

12. <u>Term; Termination</u>. This Agreement will be effective as of the date you indicate your acceptance by clicking "I AGREE" or upon digitally or physically signing the document, and this Agreement will remain in effect until terminated as set forth in this Section. Workrise may terminate this Agreement by deleting your account on the Service, with or without notice. You may terminate this Agreement by providing written notice via certified mail to the Workrise offices located at 111 Congress Ave, Suite 1300, Austin, TX 78701. Sections 1, 2, and 8 – 17 will survive termination of this Agreement.

13. <u>Assignment</u>. You may not assign this Agreement without Workrise's prior written consent. Workrise may assign its rights and obligations under this Agreement at any time.

14. <u>Dispute Resolution</u>. In the interest of resolving any disputes between you and Workrise, or you and any Company—each of whom is an intended third-party beneficiary of this Dispute Resolution Section—in the most expedient and cost effective manner, the Parties affirmatively agree that every claim, controversy, allegation, or dispute arising out of or relating in any way to the Project, the Project Details, or this Agreement ("Work Dispute"), both past and future, including without limitation before the Project, after the completion of the Project, and after abandonment of the Project, shall be resolved by binding arbitration administered by one arbitrator through JAMS. This agreement to arbitrate shall extend to any entity you sue concerning a Work Dispute or Engagement Dispute (as defined below) and/or allege is your employer, jointly or otherwise. Such entity is likewise an intended third party beneficiary of this Dispute Resolution Section.

14.1    <u>Mutual Agreement and Covered Claims.</u> This Agreement to arbitrate is mutual, covering all past and future claims, controversies, allegations, or disputes (including disputes over the enforceability, arbitrability, interpretation, and scope of this Agreement), to the maximum extent permitted by law, that (1) you may have against Workrise and/or any Company, and to any other entity you sue or (2) that Workrise may have against you, arising out of, related to, or regarding your engagement and/or termination of engagement with Workrise, including, without limitation, any and all claims alleging or relating to discrimination, harassment or retaliation on the basis of race, color, sex, age, national origin, ancestry, citizenship, religion, military or veteran status, disability, or any other protected characteristic under federal, state or local law, compensation, hours worked, wages, pay, overtime compensation, classification as exempt or nonexempt for overtime purposes, benefits, consumer reports, background checks, and claims for invasion of privacy or for the protection of biometric information, including, but not limited to, claims under the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, Title VII of the Civil Rights Act of 1964, the American With Disabilities Act, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Employee Retirement Income Security Act, the Fair Labor Standards Act, the Fair Credit Reporting Act, and all local, state, or federal laws and regulations regarding discrimination, harassment, retaliation, wages, background checks and biometric screening (collectively, "**Engagement Disputes**"). The Parties mutually agree that they shall resolve all Engagement Disputes by binding arbitration, without regard to whether the Engagement Disputes relate to acts, omissions, or other facts that occurred prior to the date of this Agreement.

All references to "you" in this Section 14 include you as well as your estate or any other person or entity claiming by or through you. All references to "Company" in this Section 14 include, without limitation, any Workrise customer (1) with whom you accepted work with or

DocuSign Envelope ID: 53DC1950-BDA0-45D0-A1AF-766B694AF7CC

otherwise performed services on behalf of or (2) you claim or allege is your employer, jointly with Workrise or otherwise, including each of its respective affiliates, subsidiaries or parent companies, and any of their respective officers, directors, members, owners, partners, employees, or managers. Each such entity or individual is expressly intended to be a third-party beneficiary of this Agreement.

Each Party's mutual promise to resolve claims by arbitration in accordance with the provisions of this Agreement between the Parties constitutes consideration for the Agreement. This Agreement to arbitrate shall survive the termination of your engagement or other contractual relationship and the expiration of any benefit plan. Nothing set forth in this Agreement shall be construed to prevent or excuse you from using Workrise's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the use of such procedures, if such exist.

**JURY WAIVER: ALTHOUGH YOU AND WORKRISE WAIVE NO CLAIMS THAT MAY BE ASSERTED AGAINST THE OTHER, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY AND ALL RIGHTS TO HAVE A TRIAL BEFORE A JUDGE OR JURY IN A COURT OF LAW AND AGREES TO PROCEED EXCLUSIVELY IN ARBITRATION FOR CLAIMS COVERED BY THIS AGREEMENT.**

14.2. Claims Not Covered by Agreement to Arbitrate. The Parties agree that neither shall initiate or prosecute any lawsuit or administrative action in any way related to any Engagement Dispute covered by this Agreement, except that this Agreement does not prohibit the filing of the following: (1) an individual action in small claims court; (2) claims by Workrise to prevent the disclosure of its confidential, proprietary, or trade secret information, or to remedy a breach of fiduciary duty, all for which Workrise may seek and obtain equitable, injunctive, declaratory or other relief from a court of competent jurisdiction;(3) an administrative charge to the National Labor Relations Board; (4) an agency charge or complaint to exhaust an administrative remedy; (5) any other charge filed with or communication to a federal, state or local government office, official or agency; or (6) any claim by Workrise to recoup a debt owed by you under a written agreement or relating to the return of Workrise's assets; or (7) a suit in a court of law to address an intellectual property infringement claim. In addition, potential claims for workers' compensation and unemployment compensation benefits are not covered by this Agreement.

14.3 The Federal Arbitration Act and Governing Law.  You acknowledge that Workrise is engaged in interstate commerce. Thus, you and the Workrise agree that the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. (the "**FAA**"), applies to this Agreement and that this Agreement shall be enforceable pursuant to and interpreted in accordance with the FAA. However, in the event the FAA may be found not to apply by a court or other binding adjudicative authority, you and Workrise agree that the Texas Arbitration Act shall apply to any covered dispute between the Parties.

The arbitrator must resolve any disputes covered by this Agreement including, but not limited to, disputes related to the applicable statutes of limitations and the law of remedies, in accordance with the laws of the State of Texas and is without jurisdiction to apply any different substantive law or law of remedies unless otherwise agreed to in writing by both Parties.

Any dispute over the arbitrability of any claim or controversy arguably subject to this Agreement, including its formation, interpretation, applicability, or enforceability, will also be resolved by arbitration conducted in accordance with this Agreement.

14.4. <u>Time Period for Commencing Arbitration</u>. You and Workrise agree that any claim for arbitration must be brought within one year from the date the claim accrues or within the time limit established by the applicable substantive legal statute of limitations, whichever is shorter.

14.5 <u>Pre-Arbitration Procedure and Mandatory Mediation</u>. Prior to filing a demand for arbitration, you must notify Workrise of any dispute or potential claim in writing, via a letter addressed to the legal department of Workrise, to provide the Parties with an informal opportunity to resolve the issue or dispute amicably before incurring the time or expense of arbitration (“**Pre-Arbitration Procedure**”). The notification to initiate this Pre-Arbitration Procedure must be sent to Workrise's legal department via a letter addressed to the legal department of Workrise (111 Congress, Suite 900, Austin, TX 78701) or via email to legal@workrise.com at least thirty (30) calendar days before you file a demand for arbitration or otherwise provides notice of your intent to arbitrate.

If you and Workrise are not able to informally resolve the dispute through Pre-Arbitration Procedure, you and Workrise agree they will mediate their dispute within sixty (60) days of the failure of the Pre-Arbitration Procedure, in person, before a mutually agreeable mediator (“**Mediation Procedures**”). You may not file a demand for arbitration until a mediation has been concluded and these Mediation Procedures have been fully followed. An arbitration demand filed before complying with the Pre-Arbitration Procedure and Mediation Procedures will be without jurisdiction and must be immediately dismissed, and a request for such dismissal by Workrise or any failure to pay arbitration fees pending such dismissal cannot be construed as a waiver of any kind by Workrise of its rights under this Agreement. Unless otherwise agreed to by the parties, each side shall provide two (2) potential mediators for consideration. The parties shall then jointly select a mediator who shall preside over the mediation. <u>All parties are required to attend the mediation in person. For the avoidance of doubt, failure by you to attend the mediation in person constitutes a violation of the Mediation Procedures.</u>

If you or your agents or representatives fail to follow this Pre-Arbitration Procedure or Mediation Procedures, violate the Pre-Arbitration Procedure or Mediation Procedures, or otherwise fail to agree to mediate, Workrise may, at its option, enforce the Pre-Arbitration Procedure or Mediation Procedures in a state or federal court of competent jurisdiction in Travis County, Texas, and you shall have to pay all fees and costs incurred by Workrise in enforcing this Pre-Arbitration Provision or Mediation Procedures. These fees and costs shall include, but are not limited to, attorneys' fees, court costs, and arbitration fees and costs, including arbitrator's fees. The Pre-Arbitration Procedure and/or Mediation Procedures, as described in this provision, do not commence an arbitration claim or toll any limitations period.

14.6 <u>Initiating Arbitration and Arbitration Rules</u>. Arbitration shall be conducted before a single arbitrator at JAMS. Arbitration can be initiated in two ways: (1) either party can voluntarily agree to submit the dispute to arbitration, through a joint request filed with JAMS or (2) the party asserting a claim can file a written arbitration demand with JAMS, demanding arbitration of the dispute, but only after complying with the Pre-Arbitration Procedure and Mandatory Mediation Procedures. Any arbitration demand(s) filed before the parties have engaged in the Pre-Arbitration Procedure and Mediation Procedures shall be

DocuSign Envelope ID: 53DC1950-BDA0-45D0-A1AF-766B594AF7CC

considered null and void by the parties, JAMS, and any arbitrator assigned to adjudicate them, and any such demands must be withdrawn and resubmitted as new after the Pre-Arbitration Procedure and Mediation Procedures have been completed. Claims may be submitted electronically through JAMS website: www.jamsadr.com and shall use the JAMS claim form.

14.7 <u>Arbitration Procedures</u>. Arbitration shall be conducted before a single arbitrator at JAMS and shall be conducted in accordance with the procedures set forth in the JAMS Employment Arbitration Rules and Procedures (the "**JAMS Employment Arbitration Procedures**"), unless those rules conflict with this Agreement, in which case the terms of this Agreement control. The parties shall use only one arbitrator, who will be selected by the JAMS Employment Arbitration Procedures. The Parties agree that the arbitrator shall issue an interim reasoned award setting forth the findings of fact, conclusions of law, and the reasons supporting the arbitrator's decision ("**Interim Award**") on which the Parties may comment for at least seven days concerning the law and reasoning of the Interim Award before an appealable, reasoned award ("**Appealable Award**") is issued. The Parties further agree that the Appealable Award may be appealed pursuant to the JAMS Optional Arbitration Appeal Procedure ("**Appellate Rules**"); that the Interim and Appealable Awards shall, at a minimum, be reasoned awards setting forth the findings of fact, conclusions of law, and the reasons supporting the arbitrator's decision; that the Appealable Award may be overturned upon de novo review of legal errors and for clear errors of fact; and that the Appealable Award shall not be considered a final award until after the time for filing the notice of appeal pursuant to the Appellate Rules has expired. Appeals must be initiated within fourteen (14) calendar days of receipt of the Appealable Award, as defined by Rule (b)(i) of the Appellate Rules, by filing a Notice of Appeal with any JAMS office and notifying the other party in writing.

14.8 <u>Discovery Procedures</u>. Unless otherwise mutually agreed in writing between the parties, discovery is limited to no more than ten interrogatories, ten requests for admission, ten requests for production, and eight hours of depositions per side. Third-party subpoenas may be issued only after a showing of good cause and upon the arbitrator's order concluding that such a showing has been made and allowing any such third-party subpoena to issue.

If a discovery dispute arises during arbitration, the parties shall be required to confer in good faith via telephone conference to resolve the dispute by agreement. Only after conferring via telephone conference, and only if the parties are unable to reach an agreement, the party asserting the dispute shall contact the arbitrator in writing to advise the arbitrator of the dispute. If a party fails to confer as required by this paragraph before filing a motion to compel, discovery motion, or any similar motion or request, the motion or request shall be stricken and the arbitrator shall lack jurisdiction to consider it. Once the parties have conferred by telephone conference as required by this paragraph, the arbitrator shall request a brief statement from each party outlining their respective positions. Such statements shall not exceed more than 2 pages, and the arbitrator shall not consider any other evidence or written argument. The arbitrator shall either decide the matter based on the submissions or schedule a conference call with counsel.

It is the intent of the parties that each arbitrator and any administering agency shall have the authority to take early action in arbitration proceedings in order to prohibit the abuse of the arbitration process by the simultaneous filing of numerous and substantially similar arbitration demands. If 20 or more demands for arbitration involving substantially similar claims are filed against the Company and remain pending, (a) JAMS (or the arbitrator in the first such proceeding if JAMS is not administering the arbitrations) shall determine phases

for such proceedings as needed for the efficient administration of all such proceedings, including the determination of a schedule for the selection of arbitrators and payment of arbitration fees and costs and the conducting of arbitration hearings in phases, and (b) any party shall be authorized to designate and rely on written discovery responses or deposition testimony from one such proceeding in other such proceedings in lieu of responding to substantially similar discovery requests in substantially similar proceedings.

Except as otherwise provided in this Section 14.8, the arbitrator will have the authority to decide all discovery and procedural matters and to allow discovery in accordance with the JAMS Employment Arbitration Procedures.

14.9 <u>Arbitration Fees and Costs</u>. If Workrise or a Company files an arbitration claim against you, Workrise shall pay all arbitration fees. If you file an arbitration claim, you shall pay JAMS a filing fee determined by JAMS when the claim is filed; Workrise shall pay for the remainder of any JAMS filing fees and all other arbitration costs; and if Workrise prevails in the arbitration, you agree to pay Workrise for all of its associated costs, including, without limitation, arbitration filing and case-management fees, deposition transcript fees, travel and copying costs.

You also agree to pay Workrise for all fees and costs, including its attorneys' fees, associated with any legal challenge by you as to the validity or enforceability of this Agreement, if Workrise prevails in having your dispute compelled to arbitration, whether by agreement, court order, or otherwise. You also agree to pay Workrise for all fees and costs, including its attorneys' fees, associated with your failure to bring all applicable claims by arbitration in accordance with the provisions of this Agreement.

Notwithstanding any other provision in this Section, Workrise will not pay your share of the arbitration fees if the arbitrator finds that either your claim or the relief demanded is frivolous or brought for an improper purpose, as measured by the standards set forth in Federal Rule of Civil Procedure 11. The Parties agree that a claim is frivolous and brought for an improper purpose if a claim is brought by you if you never performed services for Workrise during the statute of limitations period applicable to the underlying claim. In such a case, you shall be entirely liable for arbitration fees and costs borne by the parties, and you agree to reimburse Workrise for any fees and costs it incurred – including arbitration fees and costs and any other fees that are otherwise attributable to you under JAMS Employment Arbitration Procedures.

14.10 <u>Arbitration Venue</u>. The parties to the arbitration will select a mutually agreeable arbitration location. If the parties cannot agree on an arbitration location, the arbitration will be held in Austin, Texas, or alternatively, Workrise, at its sole discretion, may choose to arbitrate the claim in the metropolitan area that is closest to where work was last performed by you.

14.11 <u>Arbitrator's Authority</u>. Unless otherwise agreed to by the parties, the arbitrator shall be an attorney licensed to practice law in the location where the arbitration proceeding will be conducted or a former judge who presided in the jurisdiction where the arbitration will be conducted, and the arbitrator shall have experience in employment or independent contractor engagement matters. Except as provided below, the arbitrator shall have the authority to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim. The arbitrator shall have the authority to award, on an individual basis only and not a class basis, the same damages and other relief that would have been available to

DocuSign Envelope ID: 53DC1950-BDA0-45D0-A1AF-766B594AF7CC

you as an individual claimant in court pursuant to applicable law. Except as otherwise provided in this Agreement, the arbitrator shall have jurisdiction to hear and rule on any pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person as the arbitrator deems necessary. No arbitrator shall have the authority to conduct any arbitration in violation of this Agreement.

The arbitrator has no authority to award punitive damages, and each Party hereby waives any right to seek or recover punitive damages with respect to any dispute resolved by arbitration in this "**Punitive Damages Clause,**" except where an applicable statute allows for punitive damages. If the Punitive Damages Clause of this Agreement is found to be invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision in this Agreement or otherwise invalidate or render unenforceable such term or provision.

14.12 Dispositive Motions and Offers of Judgment. All parties to the arbitration shall have the right to file motions dispositive of all or part of any claim. Notwithstanding the foregoing, before filing any such dispositive motion, the parties shall be required to confer in good faith via telephone conference regarding the dispositive motion to attempt to narrow the issues for the arbitrator's consideration. Only after conferring via telephone conference, and only if the parties are unable to reach an agreement, the party that desires to file a dispositive motion may file it. If a party fails to confer as required by this Section 14.12 before filing a dispositive motion, or before filing any similar motion or request, the motion or request shall be stricken, and the arbitrator shall lack jurisdiction to consider it. Once the parties have conferred by telephone conference as required by this Section 14.12, the dispositive motion or similar request may be submitted and considered. The parties shall also have the right to submit binding offers of judgment. The standards set forth under Federal Rules of Civil Procedure 12, 56, and 68, as appropriate, shall apply to such dispositive motions and offers of judgment, and the Arbitrator must take notice of the standards, burdens, effects and applicable case law under Federal Rules of Civil Procedure 12, 56 and 68, as appropriate, when considering such motions and binding offers of judgment. Except as otherwise set forth in this Section 14.12, the Federal Rules of Civil Procedure shall not otherwise apply to the arbitration proceedings.

14.13 Legal Representation and Attorneys' Fees. Each Party may be represented by an attorney at any arbitration covered by this Agreement. Other than as set forth elsewhere in this Agreement, each Party will pay its own attorneys' fees; however, the arbitrator may, in his or her discretion, permit the prevailing Party to recover attorneys' fees and costs to the extent permitted by applicable law or this Agreement.

14.14 Arbitration Proceedings, Hearings and Decisions. All information and documents obtained during the arbitration will be treated as confidential and used only for purposes of the proceeding. The Parties agree to negotiate in good faith and submit an agreed protective order to the arbitrator before making any potentially confidential disclosures. In the event that the Parties cannot agree on a form of protective order, the Parties agree to submit separate proposed protective orders and seek an extension of discovery and other deadlines, if necessary, to allow the arbitrator to enter a protective order before disclosures are made. To the extent the Parties do not engage in this process before making disclosures, all documents and information obtained during the arbitration are presumed to be confidential and shall not be shared outside of the arbitration or filed in court.

The Parties shall maintain the confidential nature of the arbitration proceeding and the arbitration award, including but not limited to any pre-hearing motions or document or

evidence exchanges, documents or evidence offered during the hearing, any transcript or recording of the hearing, the arbitrator's Interim Award and Appealable Award, and, if applicable, any decision by a JAMS appellate tribunal. Nothing in this Section 14.14 shall prohibit the parties from attaching or using the above-mentioned materials in conjunction with legal proceedings before a court of competent jurisdiction to request enforcement, modification, or vacatur of an Appealable Award under the FAA or Texas Arbitration Act, but only if a dispute arises between the parties regarding enforceability, payment, or validity of any such award and only if the materials are filed with the court under seal. The parties are prohibited from publishing or using an Interim or Appealable Award, a decision by a JAMS appellate tribunal, or any of the information discovered or exchanged during the arbitration proceeding that was not previously in the public domain, for any other purpose, unless all parties to the proceeding from which the award is issued consent to such use in writing or as otherwise required by law or judicial decision.

The arbitrator shall require both sides to identify their witnesses and exhibits at least fourteen days in advance of any evidentiary hearing; shall permit cross-examination of each witness presented at such hearings; and shall allow for post-hearing briefs if requested by either party.

The arbitrator's Appealable Award shall be final and binding upon the parties, unless such Appealable Award is appealed and a JAMS appellate tribunal enters a final award, in which case the JAMS appellate tribunal's final award shall be final and binding upon the parties, except that the parties shall have the right to seek vacatur in a court of competent jurisdiction on any basis permitted by the FAA or, if applicable, the Texas Arbitration Act.

14.15 Class Action, Collective Action and Representative Action Wavier ("**Class Action Waiver**"). Any claim must be brought solely in a Party's individual capacity, and not as a representative plaintiff or class member in any purported class, collective, representative, mass, joint, or group action, any multiple-plaintiff proceeding, or any similar proceeding (collectively a "**Class Action**"). You and Workrise expressly waive any right or ability to bring, assert or maintain any Class Action in court, arbitration or any other forum. You and Workrise agree not to participate in either: (1) a Class Action against each other, either as a class or collective action representative or member; or (2) a Class Action against any Company, as either a class or collective action representative or member. You and Workrise further waive any right or ability to join or to consolidate claims with any other person or entity.

**To the maximum extent permitted by law, (a) the arbitrator is prohibited from consolidating the claims of others into one proceeding or fashioning a proceeding Class Action or awarding relief to a group of claimants or employees in one proceeding, and (b) the parties waive any right to proceed in a Class Action**, provided that (x) any dispute concerning the scope or validity of this paragraph shall be decided by a court of competent jurisdiction and not the arbitrator, and (y) should a court determine this prohibition on Class Actions is invalid for any reason, the parties waive any right to arbitration of a Class Action and instead agree and stipulate that such claims will be heard only by a judge, and not an arbitrator or jury, after the parties arbitrate any claims subject to this Agreement. Notwithstanding the foregoing, you and Workrise may agree to combine or aggregate multiple persons' or entities' claims or discovery, to conduct a Class Action, or to make an award to any person or entity not a party to the arbitration. Any such agreement must be in writing, signed by both parties, and reference this Agreement. Further, after the signing of this Agreement, you and Workrise may mutually agree in writing, signed by both parties, and referencing this Agreement, to have a case heard by a court, sitting

DocuSign Envelope ID: 53DC1950-BDA0-45D0-A1AF-766B594AF7CC

without a jury, rather than in arbitration. In such a case, you and Workrise still agree that the case shall still be heard by a court on an individual basis and not on a class or collective action basis.

**THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER, AND THAT YOU MAY BRING CLAIMS AGAINST A COMPANY, ONLY IN THEIR INDIVIDUAL CAPACITIES AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE OR REPRESENTATIVE PROCEEDING. THE PARTIES UNDERSTAND AND CHOOSE TO HAVE CLAIMS UNDER THIS AGREEMENT DECIDED INDIVIDUALLY, THROUGH ARBITRATION.**

14.16 Agreement Term and Amendment. This Agreement, which covers all past and future claims, is effective as of the date you indicate your acceptance by signing the document, either physically or digitally, or upon indicating your acceptance by clicking "I Agree" to the Agreement on Workrise's website. **ALTERNATIVELY, THIS AGREEMENT SHALL BE EFFECTIVE IF YOU REMAIN A CONTRACTOR OF WORKRISE FOR MORE THAN 45 DAYS AFTER RECEIPT OF THE AGREEMENT, EVEN IF YOU DO NOT CLICK "I AGREE," SIGN THE AGREEMENT, OR OTHERWISE AFFIRMATIVELY INDICATE YOUR AGREEMENT. UPON SUCH OCCURRENCE, YOU WILL BE DEEMED TO HAVE ASSENTED TO THE AGREEMENT.**

This Agreement shall survive the engagement or other relationship between you and Workrise and shall apply to any covered claim whether it arises or is asserted during or after termination of your engagement or other relationship with Workrise or the expiration of any benefit plan. This Agreement constitutes the complete agreement of the Parties with respect to the subject matter hereof, including, without limitation, on the subject of arbitration of claims, and this Agreement supersedes any prior or contemporaneous oral or written agreement or understanding. Workrise shall have the right to prospectively terminate the provisions of this Agreement; provided, however, that such termination (1) extends only to prospective claims that accrue and/or are known prior to such termination, (2) applies equally to claims by you and Workrise, and (3) requires advance notice to be termination is effective.

You understand that by signing below you are knowingly and voluntarily agreeing to the terms of this arbitration provision. You further acknowledge and understand that, unless you are engaged in California, by accepting engagement through Workrise and continuing to work through it, you agree to be bound by the terms of this arbitration provision as provided above, whether you sign this acknowledgement or not.

15. Confidential Information. You must keep Workrise's and any Company's confidential information absolutely confidential, except as required or provided by law, including but not limited to information about other Companies, Projects, Project Details and Workrise's business model and pay practices. This section does not apply to information that: (a) was publicly known and made generally available in the public domain prior to the time of disclosure by Workrise or a Company; (b) becomes publicly known and made generally available after disclosure by Workrise or a Company to you through no action or inaction on your part, (c) is already in your possession at the time of disclosure, as shown by your files and records; or (d) is obtained by you from a third party without a breach of the third party's obligations of confidentiality.

16. Change of Workrise's Name. Both parties agree that Workrise has the right to change the

DocuSign Envelope ID: 53DC1950-BDA0-45D0-A1AF-766B594AF7CC

name of the company from time to time. It is agreed furthermore that this agreement shall remain in effect after Workrise has the name changed pursuant to relevant laws and regulations. It is unnecessary to re-sign this Agreement only to reflect the change of the company's name. Workrise shall notify you if the company's name is changed. The notification will validate the name change as the amendment to this agreement. No further act is needed from either party.

17. <u>Miscellaneous</u>. If any provision of the Agreement, including any provision of the Dispute Resolution section, is held to be invalid or unenforceable, such provision shall be struck, and the remaining provisions will be enforced to the maximum extent permitted by law. Workrise's failure to enforce any right or provision in this Agreement will not constitute a waiver of such right or provision unless acknowledged and agreed to by Workrise in writing. This Agreement, with the Terms and the Privacy Policy, comprises the entire agreement between you and Workrise and supersedes all prior or contemporaneous negotiations, discussions or agreements, whether written or oral, between the Parties regarding the subject matter hereof.

***Signature Page Follows***

In witness whereof, the parties hereto have knowingly and voluntarily executed this Agreement to be effective as of ___1/8/2024_____ ____, 20____.

**PROFESSIONAL:**

_____
(Name of business entity)

███████████████████████

Title:

**WORKRISE:**

RUSCO Operating, LLC;
Ally Consulting, LLC;
Onshore Quality Control Specialists, LLC;
Worldwide Quality Control Specialists, LLC;
On and Offshore Quality Control Specialists;
LLC, or Nationwide Quality Control Specialists,
Inc.

By: Workrise Technologies Inc., the Managing
Member of RUSCO Operating, LLC, Ally
Consulting, LLC, Onshore Quality Control
Specialists, LLC, Worldwide Quality Control
Specialists, LLC, On and Offshore Quality Control
Specialists, LLC, and Nationwide Quality Control
Specialists, Inc.

By: *Mike Witte*

Name: Mike Witte
Title: President & CEO